Schmidt, by guardian *ad litem,* Appellant, vs. Riess and another, Respondents.

*March 11—April 7, 1925.*

*Negligence: Automobiles: Law of the road: Failure of driver to maintain lookout: Children playing in street: Contributory negligence: Instructions: Inadequate damages: Passion or prejudice: Trial of actions together: Discretion of court.*

1. The assessment of damages in a personal injury action is peculiarly for the jury. p. 579.
2. An award of $500 for injuries to a girl less than seven years of age is not so grossly inadequate as to manifest passion or prejudice, where the evidence shows that the child suffered from shock and some bruises and a left inguinal hernia. p. 581.
3. The question of the contributory negligence of a child a few months less than seven years of age is for the jury under proper instructions. p. 581.
4. An instruction that the plaintiff child was not held to the same degree of care as adults, but was required to exercise that degree of care which is ordinarily exercised by children of her age, experience, and intelligence, differentiates clearly between the degree of care to be exercised by children and that to be exercised by adults. p. 581.
5. In an action for injuries sustained by plaintiff in an automobile accident, the evidence is *held* to sustain a finding that the driver of the automobile was negligent in not maintaining a proper lookout, and also to show contributory negligence of the child. p. 582.

6. The trial of the action of the child for personal injuries with that of the father for medical and other expenses was not prejudicial where the facts and proofs and answers in each case were practically identical, both parties were represented by the same counsel, and the additional testimony necessary to sustain the father's action was not prejudicial to the interests of the child. p. 584.

7. Whether two or more cases should proceed together before the same jury rests largely in the discretion of the trial court. p. 584.

CROWNHART, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: CHESTER A. FOWLER, Judge. *Affirmed*.

The appeal is from a judgment dismissing plaintiff's complaint upon the merits, with costs.

The action is one for personal injuries. Martin street is an east-and-west street in the city of Milwaukee and is intersected at right angles by Milwaukee street. A little over a block to the east of this intersection is a public school where the plaintiff attended as a pupil. On the northeast corner of the intersection of said streets there was a sign indicating to travelers upon the highway the presence of the school.

On the 3d day of May, 1921, at about 3 o'clock in the afternoon of that day, and after school had been dismissed, plaintiff with several of her companions proceeded west on the north side of Martin street until she had approached within a short distance of the east crossing of Milwaukee street (such distance being variously estimated between twelve and twenty feet). These children then, together with the plaintiff, suddenly took a notion to run across the street, two of them preceding the plaintiff, while several of the other children followed in the rear. As the plaintiff left the north curb an automobile approached from the west on Martin street at a speed variously estimated by the witnesses of from ten to twenty miles an hour.

Plaintiff testified that she walked across the street; that before attempting to cross she looked both ways; that she

saw the automobile in about the middle of the block, west of the intersection, and that when she arrived at a point about two feet to the south of the center of the street she was struck by defendant's automobile, which resulted in the injuries complained of.

Mrs. Levine, who occupied a suite of rooms in the building situated upon the southeast corner of the intersection, testified that she saw the children running across the street; that the automobile approached at a rapid rate of speed, estimated by her as between twenty and twenty-two miles an hour; that the children attempted to cross the street about twelve feet east of the intersection, and that the automobile struck one of the little girls, but she was unable to state with any accuracy what part of the machine struck the girl, although she thought it was the front part of the machine.

One Hanley, a witness for the defendant, testified that while walking south on Milwaukee street, and as he approached the northeast corner of the intersection of the two streets named, he saw these girls playing near the northeast corner of the intersection; that they then ran out into the street, chasing each other; that he saw the automobile coming from the west, and that as he arrived at the crosswalk the children were zigzagging over the street, chasing each other, and that the plaintiff ran into the front fender of the automobile; that the automobile at the time of the collision was operated at a rate of speed of about ten miles per hour.

The defendant testified that he knew of the location of the public school and that school dismissed about 3 o'clock in the afternoon, and that he was aware of the sign posted on the northeast corner of the intersection above referred to; that when his car was midway across Milwaukee street he observed the children standing near the northeast corner, and that he slowed down his speed to about seven to ten miles an hour; that he did not again observe the children until he was about twenty to twenty-five feet east from the crossing,

when he suddenly observed the plaintiff about one or one and one-half feet distant from his automobile; and that at that instant the accident happened.

Dr. Mueller, who was the resident surgeon at the Emergency Hospital, where the plaintiff was taken after the accident, testified that she was suffering from shock; that her head and body showed a number of bruises; that she complained of pain in her abdomen; that subsequently a swelling in the abdomen was observed; that she had a slight temperature and a high pulse, and she complained of great abdominal pain; that her abdomen became greatly distended, and that she suffered a left inguinal hernia.

Plaintiff was removed from the Emergency Hospital on the 5th day of May to the Deaconess Hospital and there remained for about ten days, when she was taken home, and was confined to her bed until the first part of July. The parents testified that the plaintiff did not return to school until the following February, and that she suffered from headaches and nervous disturbances.

Dr. Smith, a witness for the defendant, testified that he had made an examination of the plaintiff while she was at the Emergency Hospital; that she had two small cuts on her face; that she complained of her side over the left side of the abdomen; that he again examined her in May, 1924, and that her general physical condition appeared normal with the exception of a small swelling over the left groin; that the swelling did not seem to affect her in running around or moving about and that she appeared to be perfectly well; that she is naturally a pale little blond child; that with the exception of the little swelling on the upper part of the thigh he considered the child perfectly well; and that he was unable to determine whether the injury was a hernia or not. There was also medical testimony that the plaintiff would be obliged to undergo an operation to remove the hernia.

At the time plaintiff's action was begun, the father also started an action against the defendant to recover damages

sustained by him.   At the opening of the trial the court, over the objections of the plaintiff, consolidated the two actions for the purposes of the trial, requiring that the two cases be tried together and submitted to the same jury.   The order of the court is as follows:

"The above entitled actions being both up for trial and regularly on the day calendar, and it appearing that they both involve the same transaction and may properly be tried together to the same jury and that the public interest and the condition of the calendar require that they be so tried, at the suggestion and on motion of the court, and over 'the objection of the plaintiffs, George J. Schmidt plaintiff in the one case and guardian *ad litem* for the infant plaintiff in the other,

"It is ordered that the cases be consolidated for purposes of trial and that the issues of both be submitted to the same jury."

The jury in its special verdict in the instant case found that the defendant, as he approached the place of collision, did not fail to use ordinary care with respect to speed; that he failed to use ordinary care with respect to keeping a lookout; that the want of ordinary care thus found was the proximate cause of the injury to the plaintiff; that there was a want of ordinary care on plaintiff's part which proximately contributed to produce her injury; and that she sustained damages in the sum of $500.

Upon the verdict so returned judgment was ordered in favor of the defendant, dismissing plaintiff's complaint with costs, and from such judgment plaintiff has prosecuted this appeal.

*W. T. Sullivan* of Milwaukee, for the appellant.

For the respondents there was a brief by *Leahy & Kenney* of Milwaukee, and oral argument by *John J. Kenney.*

Doerfler, J.   Two assignments of error are alleged by plaintiff's counsel.   First, it is argued that the court erred

in refusing to set aside the verdict as perverse and in not granting a new trial.

In support of his claim of perverseness plaintiff's counsel contends that the damages assessed by the jury are so grossly inadequate as to manifest passion and prejudice, and that such passion and prejudice also entered into the answer of the jury wherein they found the plaintiff guilty of contributory negligence. That the damages assessed are not large is beyond dispute, whether we believe the testimony of the plaintiff's medical expert or that of the defendant. Damages in substantially this amount have been assessed by juries for injuries far less serious, and judgments upon such awards have not only been approved by the lower court, but have been affirmed on appeal in this court. Damages assessed by juries in personal injury cases are the constant subject of attack, upon the ground that they are either excessive or inadequate, and upon either ground verdicts have been set aside by trial courts and new trials granted, and in some instances this court has ordered new trials. The assessment of damages in a personal injury case presents a matter, however, which is peculiarly within the field of a jury to determine. There is no yardstick or definite standard which can be used as a guide in all cases. Therefore it is to be expected, and experience has actually shown, that the amounts awarded by juries largely vary. Jurors are obtained from the various walks of life, with various degrees of knowledge and experience and with various interests, and, it must be assumed and admitted, with certain prejudices. Jurors are made up of heads of families, married people who are childless, and of many who are unmarried. Unconscious prejudices exist with some in favor of the plaintiff, and with others in favor of the defendant. But after conceding all of these various elements that enter into the make-up of the personnel of the jurors and of the jury, it is largely designed that the average judgment of twelve

men and women chosen from the citizenship of the community in which the parties reside will meet the requirements of justice, and that a verdict of the jury will be a true and just one.

It is almost inconceivable that a lurking prejudice can exist in the mind of any juror called upon to sit in judgment upon a case like that of the instant one. The plaintiff was an innocent young girl, approximately two and one-half months less than seven years of age. Every human being who is possessed with the normal qualities of his kind is a lover of children. Few are those, indeed, who have arrived at mature age who do not retain a vivid impression of their childish instincts, weaknesses, and tendencies, and even without these impressions a normal person cannot help but observe them, for children are about us and with us at all times and in all places. So that it would seem that the verdict of the average jury would reflect substantial justice, particularly towards an infant plaintiff, in a case like this.

It is within the knowledge of the practitioner at the bar and of the courts that on the subject of assessing damages a great diversity of opinion manifests itself. Some of the jurors on the early ballots may vote for a nominal sum, while others may be in favor of an assessment running high up into the thousands of dollars. Yet, after mature consideration, the various divergent views of the jurors become reconciled, and the result in the vast majority of cases is highly satisfactory and is readily approved by the courts.

In the instant case we cannot say that we would not have been better satisfied had the verdict been larger, but the question presents itself to us at this stage of the proceeding whether we shall say that the jury was actuated by prejudice or malice in the assessment of damages, especially in view of the fact that the trial judge, who was present at the trial and saw the parties and the witnesses and who heard the testimony, has approved the verdict. There are cases, however, where this court has set aside verdicts on account of perverseness, notwithstanding the approval of the verdict

by the trial judge. Such instances, however, are few in number, and on the whole it is our observation that the trial court conscientiously discharges its sworn duty and proceeds not only in accordance with the law and the evidence but with a conscientious regard to promote the ends of justice. Having these considerations in mind, we are constrained to the view that this assessment of damages must be upheld, and that it is not so flagrantly wrong as to warrant our interference.

Plaintiff's counsel also contends that there is no credible evidence in this case under and pursuant to which the plaintiff could be found guilty of contributory negligence. There are comparatively few cases in the books where juries have found a child of this age, and under similar circumstances, guilty of contributory negligence. In a few of the states an arbitrary rule has been adopted, where a child less than seven years of age is deemed incapable of being guilty of contributory negligence. Such rule, however, is not in accordance with the weight of authority, and in most of the states the question is one for a jury to pass upon. A complete and exhaustive note upon the subject will be found in L. R. A. 1917F, on page 55, and subsequent pages, where various cases in the appellate courts of the states are digested and reviewed. In this state, with a child of plaintiff's age, the question of contributory negligence is submitted to a jury under proper instructions. The trial court charged the jury as follows:

"Children are not held to the same degree of care as are adults. The care required of them is dependent upon their age and experience. *Eleanor* [the plaintiff] is to be held to that degree of care that is ordinarily exercised by children of ordinary care and prudence of her age and experience and intelligence, and to foresee what a child of her age, experience, and intelligence would ordinarily foresee, under like circumstances."

The trial court, therefore, very clearly differentiated between the degree of care to be exercised by children and that

to be exercised by adults. The instruction was couched in plain English, so that the ordinary jury would be able to fully comprehend it and recognize its force and meaning.

There is ample credible evidence in the case to show that the driver of the automobile was not operating his car at an unlawful rate of speed; in fact, the jury so found. On the other hand, realizing the danger of operating a motor vehicle upon the public streets of a city at a time when children have been dismissed from school and are proceeding on their way to their homes, notwithstanding the finding wherein the defendant was acquitted of illegal speed, the jury found that he was negligent in not maintaining a proper lookout. Such finding of the jury is well supported by the credible evidence in the case.

There is also ample credible testimony in the case that the child ran into the fender of the machine, which indicates quite clearly that she exercised no regard whatsoever for her own safety immediately preceding the accident, but that she was engrossed with her fellow pupils in the pursuit of a childish game. Notwithstanding our conviction that the verdict would have been more satisfactory had the plaintiff been acquitted of contributory negligence, we cannot say that the evidence upon that subject is so weak as to justify a reversal of the case and the ordering of a new trial.

Plaintiff's counsel strenuously urges that the lower court erred in ordering these two cases tried together, and here the question is presented whether the action of the court resulted in a prejudice of any substantial right of the plaintiff by reason of such order. In 38 Cyc. 1269, it is said:

"The court may order several causes of the same nature in which the parties are the same to be tried together; and where several actions are brought by one plaintiff against different defendants, or by different plaintiffs against one defendant, and the issues are the same in each action, the court may, in order to avoid unnecessary delay and expense, order them to be tried together. It has been held that the

order may be made although defendants employ different counsel, and the evidence in the several cases is different. The order does not have the effect of merging the several actions into one. Its only effect is that the suits be tried together. Each case retains its distinctive characteristics and the judgment in each case is several. And if the proceedings and judgment in either of the cases are erroneous, such error must be fatal to that judgment, although the others may be free from error. It is within the discretion of the trial judge at what time to submit each case to the jury. Where the defenses in the several cases are different it is erroneous to order them to be tried together. But error in ordering a trial of separate causes together is harmless if the final result reached is right." See, also, notes of numerous cases cited under this text.

This is not strictly a consolidation of actions.

"The term 'consolidation' has sometimes been applied to a mere trial of several actions together, but properly a consolidation of actions is to be distinguished from the trial of several actions together, for an actual consolidation involves the union of several actions into one which is tried as such, while where several actions are tried together, although there is but one trial, the identity of the actions is preserved and separate verdicts and judgments rendered. . . . The object of consolidating two or more actions is to avoid a multiplicity of suits, to guard against oppression or abuse, to prevent delay, and especially to save unnecessary costs or expense; in short, the attainment of justice with the least expense and vexation to the parties litigant." 1 Corp. Jur. 1121.

The reasons as expressed in the order of the court are almost identical with those set forth in the foregoing quotation from Corpus Juris. While in the instant case there were two different parties plaintiff, the facts in each case were identical, and the proofs were identical excepting only that in the father's case there was evidence of medical and other expenses for which he might recover, but which could not be considered in the case of the plaintiff in this action.

Both plaintiffs were represented by the same counsel. The answer in each case was substantially the same. The additional testimony necessary to prove the father's case could not in any sense be deemed prejudicial to the interests of the instant plaintiff in her case. On the contrary, the large expenditures for medical and other purposes ordinarily would have a tendency to result in increased damages for the infant. While it can readily be perceived that many cases might arise with substantially the same facts where a joint trial might result in prejudice, it is inconceivable how anything in the instant case, appearing from the record, can be claimed to have had this result. Whether or not two or more cases may proceed in a joint trial before the same jury is largely in the discretion of the trial court, and in the instant case we are convinced that the order of the trial court was proper; that it expedited business; that it prevented delays; that it promoted economy and substantial justice. See, also, *Witherlee v. Ocean Ins. Co.* 24 Pick. 67; *Springfield v. Sleeper,* 115 Mass. 587; *Jones v. Boston,* 197 Mass. 66, 83 N. E. 309; *Burke v. Hodge,* 211 Mass. 156, 97 N. E. 920; *Benge's Adm'r v. Fouts,* 163 Ky. 796, 806, 807, 808, 174 S. W. 510.

From the foregoing it follows that the judgment of the lower court must be affirmed.

*By the Court.*—It is so ordered.

CROWNHART, J. (*dissenting*). I am not unaware that this court has said that questions of contributory negligence of a child as young as this child are for the jury. But in every such case a jury had passed upon the question and found the child free from negligence. I have been unable to find a case in this state where a child of seven or under has been directly held capable of negligence. As a matter of fact, this court in principle early held to the contrary. *Meibus v. Dodge,* 38 Wis. 300. In that case a man left his

sleigh in the street with a dog in the sleigh, on watch.   A child of seven came alone, and meddled with the whip in the sleigh, and was bitten by the dog.   The trial court held that, in view of her age, the fact that she yielded to childish instincts to trespass on defendant's property was no defense to an action for damages.   That instruction was upheld by this court.   In England, in 1841, Lord DENMAN held that a child of seven, playing around an unattended cart and horse, could not be held guilty of negligence to defeat an action for damages against the owner on account of negligence. *Lynch v. Nurdin,* 1 Q. B. Rep. (1841) 29 (1 Ad. & E. N. s. 29), 41 Eng. Com. Law Rep. 442.

It has always been held under the common law that a child of seven or under cannot be held guilty of crime, and in a case in Iowa the court held that, assimilating the law of crime as applicable to children, a child of seven or under was incapable of negligence. *McEldon v. Drew,* 138 Iowa, 390, 116 N. W. 147; also see *Chicago City R. Co. v. Wilcox,* 138 Ill. 370, 27 N. E. 899; *Lovejoy v. D. & R. G. R. Co.* 59 Colo. 222, 146 Pac. 263; *Gregg v. King Co.* 80 Wash. 196, 141 Pac. 340.

This court has never determined the line of demarcation between a child capable of negligence and one incapable of negligence because of age.   It has recognized that a child of five was incapable (*Hooker v. C., M. & St. P. R. Co.* 76 Wis. 542, 44 N. W. 1085), and it has held that a child of eight years and nine months might be held negligent as a matter of law (*Ryan v. La Crosse City R. Co.* 108 Wis. 122, 83 N. W. 770).

In the many cases coming before this court on the subject of infant negligence, I have been unable to find a single case where a jury has ever before held a child under eight guilty of negligence.

I think we should hold a child under seven incapable of negligence.   That does not mean that a person accidentally

injuring a child is liable in damages. It is only where the party is guilty of negligence in injuring the child that he can be held, no matter how young the child.

This would be a humane rule and in keeping with common sense and common experience. A child of seven or under is guided only by instinct or impulse. It does not yield to reason. It keeps out of harm by reason of fear, and it may be depended upon to use such reason and judgment as it has to keep out of danger because of fear of bodily pain.

There is little evidence in the case; it is simple; it is not much in dispute. The defendant was driving his automobile easterly on Martin street, where it crosses Milwaukee street at right angles, at about 3 o'clock p. m. This crossing is near a public school and has signs to notify drivers to that effect. Defendant was familiar with the crossing and the signs. He saw children going from school as he approached the crossing. Three little children were at the northeast corner of Martin and Milwaukee streets, one of whom was the injured child, *Eleanor Schmidt*. She says she looked west on Martin street and saw the defendant in the middle of the block, and then she and the others started to run across Martin street on a diagonal to the east, her companions in the lead. The latter were ahead of defendant's machine and escaped. *Eleanor* was caught, run down, and bodily injured. She did not again look to the west after she started to cross Martin street on a run.

Conceding for the purposes of the argument that a child of seven may be held responsible for negligence, still I feel quite certain that we should say under the facts of this case that the child was free from negligence. If this court may say, as it has, that a child of eight may be held guilty of negligence as a matter of law, then I think we should not hesitate in a case like this to say, as a matter of law, there was no negligence on the part of the child.

Children are compelled by law to attend school. Poor people are unable to send a guardian along to protect them in crossing the streets. The appalling number of accidents due to careless drivers of automobiles must terrorize parents who are obliged to send their little children on the streets unprotected. I think the courts are unduly lax in protecting infants of tender years and too prone to shield reckless drivers. These common-law rules should be made to fit present conditions of fast death-dealing automobiles instead of the old conditions of horse and ox teams.

This little girl of six summers saw the road open before her, with no auto nearer than a half block, and, knowing she was within the protected school area, hastened across the street, following her little schoolmates. It does not sound reasonable to me to say she was guilty of negligence. It disregards human experience. It places a burden on little children abhorrent to our human instincts. I don't think this child should be held guilty of negligence.

I respectfully dissent from the majority opinion.

