KIVINIEMI and others, Respondents, vs. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY OF BOSTON, imp., Appellant. [Three cases.]

*April 28—June 11, 1930.*

620

622

*Charles H. Gorman* of Milwaukee, for the appellant.

For the respondents there was a brief by *Donovan & Gleiss* of Tomah, attorneys, and *Grady, Farnsworth & Walker* of Portage, of counsel, and oral argument by *T. P. Donovan* and *Walter H. Farnsworth.*

FOWLER, J. The appellant assigns as error that the court erred in the following particulars: (1) Not holding the driver of the automobile guilty of contributory negligence as matter of law. (2) Not holding the wife and daughter of the driver of the automobile so guilty as matter of law. (3) Permitting damages to be assessed to plaintiff Sanni for the injuries done by the second car. (4) Not holding the truck not covered by insurance. (5) Not permitting cross-examination of witnesses by the attorney of the company after examination by the attorney of the other defendants. (6) Trying the three cases together over defendants' objection.

Assignments (1) and (2) above are manifestly without merit under the evidence stated. So of assignment (6) under *Schmidt v. Riess,* 186 Wis. 574, 203 N. W. 362.

(5) The record shows that the defendants Hildenbrand appeared on the trial by Sullivan & Sullivan and the defendant insurance company by Mr. Gorman. Cross-examination of witnesses was conducted by Mr. Sullivan. On the latter's ceasing, Mr. Gorman, in several instances, asked the privilege of further cross-examination. This was permitted by the court in every instance where the interests of the Hildenbrands and the company were adverse, as in connection with the question whether the car involved in the collision was insured. In all other instances it was denied. On all other questions the interests of the company and the other defendants were identical. They were all on the same "side" of the case. Circuit Court Rule XXII provides that "on the trial of actions only one counsel *on each side* shall examine or cross-examine the same witness." It is considered that the court's ruling was correct under this rule.

(3) We are of opinion that under the circumstances stated the defendants are liable for the additional injuries resulting to the plaintiff Sanni from being struck by the other automobile. "The innocent or culpable act of a third person may be

the immediate cause of the injury and still an earlier wrongful act may have contributed so effectually to it as to be regarded in law the efficient, or at least the concurrent and responsible, cause." 1 Sutherland, Damages (4th ed.) § 40. "Where the immediate cause of the injury is the wrongful act of a third person the injured party has, of course, an action against him; and this, in some of the earlier cases, was thought to bar an action against any antecedent actor more remotely responsible; but it now seems to be settled that the liability of the more immediate party does not relieve any other party whose act can properly be treated as the efficient and proximate or concurrent cause." 1 Sutherland, Damages (4th ed.) § 42. It does not here appear, or at least was not determined, whether the driver of the automobile that struck Sanni was negligent or acting with due care, but under the rules above stated negligence on his part would not affect the defendant's responsibility. A typical negligence case illustrating the text is where a stage-driver negligently precipitated his coach into a canal and a lock-tender thereafter negligently opened the gates of a lock and a passenger in the coach was drowned thereby. *Byrne v. Wilson*, 15 Irish C. L. Rep. 332. The owner of the stage-coach was held liable for the death of the passenger. No case is cited or found to the precise point that where one by negligence of another is rendered unable to protect himself and while in such condition is injured by negligence of a third person, the first wrongdoer is responsible for all the resulting injuries. The point must be determined upon general principles. The question resolves into whether the action of the driver of the second car operated as an independent intervening responsible cause. We find the governing principle quoted in 1 Thompson, Commentaries on Negligence, sec. 49, from *Schumaker v. St. Paul & D. R. Co.* 46 Minn. 39, 48 N. W. 559, which statement is also found in the syllabus to *Kellogg v. Chicago & N. W. R. Co.* 26 Wis. 223, although hardly

justified by anything in the body of the opinion, as follows: "An efficient, adequate cause being found for the injuries received by the plaintiff, it must be considered as the true cause, unless another, *not incident to it, but independent of it,* is shown to have intervened between it and the result." In the same section the author quotes from the opinion of the United States supreme court in the case of *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S. 469, 475, in part as follows: "The inquiry must therefore always be whether there was any intermediate cause *disconnected* from the primary fault, and self-operating, which produced the injury." The author in sec. 52 states a deduction of the general rule as follows: "Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes if such intervening causes were *set in motion* by the original wrongdoer. . . . The inquiry should be as to whether the original wrongful act was the antecedent, efficient, and dominant cause which put the other causes in operation." Here the second collision followed so closely upon the first that the immediate effect of the first upon Sanni was still in operation when the second occurred. The second cause was put in operation by, was connected with and incident to the first cause; it was not disconnected with it or independent of it; it was the dominant cause which set the other in operation. An analogous situation is where the injuries resulting from negligence are aggravated by negligence of a physician in treating them. The injured person being without fault in selecting the physician, the combined results of his malpractice and the original injury are attributable to the first wrongdoer. *Fisher v. Milwaukee E. R. & L. Co.* 173 Wis. 57, 180 N. W. 269.

(4) It is a close question whether the truck involved in the collision was insured. It is a question of fact. The

jury solved the question in favor of the plaintiffs, and their solution was approved by the trial court. They were justified, upon the evidence, in believing that one of the Hildenbrands called up the office of the company's agent by telephone and requested the coverage and received answer that it would be attended to. It is held in *Stein v. Jasculca,* 165 Wis. 317, 162 N. W. 182, that when one calls up a person's place of business by phone in the usual way in connection with business with such person and someone there answers and undertakes to accept the communication, this is *prima facie* evidence that the message was delivered to someone authorized to receive it on behalf of that person, even though the voice of the person is not identified. In *Gardner v. Hermann,* 116 Minn. 161, 133 N. W. 557, the rule is quoted with approval as stated in *Gilliland v. Southern R. Co.* 85 S. C. 26, 67 S. E. 20, as follows: "One who answers a telephone call from the place of business of the person called for, and undertakes to respond as his agent, is presumed to speak for him in respect to the general business carried on by such person at that place." This rule was adopted by this court advisedly and we adhere to it. The presumption materially supports the inference that the woman answering the phone had authority to issue the customary rider and bind the company by her statement to attend to the coverage notwithstanding the testimony of the one who customarily attended to such calls and such matters to the effect that she did not recollect the transaction and found no record thereof which customarily would have been made. We consider that under the evidence the jury might properly infer both that statement was made by phone as contended by Hildenbrand and that the person making it had authority to bind the company by her statements. The terms of the contract to cover the truck involved being fixed by the existing policy, the oral agreement would not fail for indefiniteness, as might be the case had the transaction been respecting an en-

tirely new transaction in absence of express designation of the terms of the policy to be issued. The question therefore resolves into whether an oral contract for automobile collision indemnity insurance is valid. In *Milwaukee Bedding Co. v. Graebner*, 182 Wis. 171, 196 N. W. 533, it was held that oral contracts for fire insurance are valid. The ruling was based upon the fact that fire insurance is customarily negotiated by business men calling up their insurance agent and placing their order, and that in such case both parties consider that the coverage dates from the time of the call and the policy issued is dated as of the noon next previous. It was considered that such serious disturbance of settled notions would result from holding that one so placing an order for insurance was unprotected in case fire should occur after the placing of the order and before the writing of the policy that the validity of the insurance so negotiated should not be considered as abolished except by express legislative provision, and that the general statutory provision, sec. 203.06, that no fire insurance company should issue any policy in terms other than conforming in all particulars to forms on file with and approved by the commissioner of insurance, did not operate to abolish oral contracts so negotiated. It was considered that the standard form of insurance prescribed by statute leaves nothing indefinite in an insurance contract so negotiated. There is no statute respecting automobile indemnity insurance similar to sec. 203.06 or similar to sec. 204.31, held to invalidate oral agreements for accident and health insurance. *Schilbrch v. Inter-Ocean Cas. Co.* 180 Wis. 120, 192 N. W. 456. The existing blanket policy here involved rendered the terms of the insurance contemplated by the parties as definite as the standard form of policy renders an oral contract for fire insurance. The same considerations that moved the court to hold valid additional fire insurance negotiated in the same

manner as was the additional coverage here requested, apply to validate the agreement to issue the additional coverage. Automobile insurance policies are commonly negotiated and issued as are those of fire insurance. Should one before starting on an automobile trip orally request an agent to renew a policy about to expire issued by the agent on his automobile and be assured that it would be attended to, precisely the same reason exists for holding insurance effected as for holding fire insurance renewals effected under like circumstances. Had the collision here involved occurred after the request for and promise of coverage were made and before the writing of and mailing of a rider would customarily be consummated, there would be no hesitancy in holding the coverage of the truck effected.

Does lapse of time between the ordering of the coverage and the accident involved affect the consummation of the coverage? An oral ordering and promise of renewal of a fire insurance policy without delivery or writing of a renewed policy was held to constitute an oral contract of insurance, notwithstanding a lapse of four and a half months between the order and the destruction of the property by fire. *Zell v. Herman Farmers' Mut. Ins. Co.* 75 Wis. 521, 44 N. W. 828. In the *Zell Case* inquiry was once made in the meantime by the insured of the agent and assurance given by the agent that the insurance was in force, but this did not really affect the question of validity. If the contract was made at all, it became effective immediately upon the making of the request and the promise. Mere lapse of time would not operate to invalidate what was so made valid. The premium was actually paid in the case cited, and here it apparently was not, although the insured professes belief that it was. But the fact of nonpayment goes to the point whether the transaction occurred as claimed by the owners of the truck rather than to whether the coverage was ef-

fected if it did occur. Nonpayment of the premium does not affect the consummation or validity of the oral contract. *Campbell v. American Fire Ins. Co.* 73 Wis. 100, 40 N. W. 661; *John R. Davis L. Co. v. Scottish U. & N. Ins. Co.* 94 Wis. 472, 69 N. W. 156. We conclude that the finding of the jury that a contract of liability insurance covering the truck involved in the collision must be upheld.

The company claims that the provision of the policy given in the statement of facts relating to changes in the face of the policy as written or printed and in its terms, precludes the plaintiff from showing the oral agreement for coverage. We consider that the oral agreement was for additional new insurance and should not be construed as a change in the face or terms of the policy itself. The provision was prepared by the company, and if subject to different interpretations should be given construction most favorable to the insured. The additional coverage makes no change "in the face of the policy as printed" and does not relate to any "extension or waiver." Nor does it change the terms of the policy. The manner of effecting the additional insurance orally agreed upon was left to the company to effect in the regular manner, which it failed to do, just as the companies failed to issue policies for renewed insurance in the cases above cited.

This disposes of all questions raised by the assignment of errors.

*By the Court.*—The judgments are affirmed.