TEUFEL, by Guardian *ad litem,* Respondent, v. HOME
INDEMNITY COMPANY, Appellant.*

*November 1—November 28, 1961.*

* Motion for rehearing denied, with $25 costs, on February 6,
1962.

68

For the appellant there was a brief by *Rosenbaum & Rosenbaum,* attorneys, and *Ralph K. Rosenbaum, Jr.,* of counsel, all of Milwaukee, and oral argument by *Ralph K. Rosenbaum, Jr.*

For the respondent there was a brief and oral argument by *Max E. Geline* of Milwaukee.

DIETERICH, J.    The issues on this appeal are:

(1) Is there credible medical evidence to sustain the jury's finding of permanent pain, suffering, and disability?

(2) Whether the damages awarded for such permanent pain, suffering, and disability are excessive?

The accident occurred on Thursday, March 12, 1959. The plaintiff was eighteen years of age and was a first-year student at Oshkosh State Teachers College. Her mother resided at Whitefish Bay, Wisconsin, and she was then living in Webster Hall, a college dormitory. As a result of the accident, she was thrown from the front seat of the car in which she was riding, onto the shoulder of the highway.

After the accident she was taken to her residence located at the college dormitory. Dr. Pfefferkorn was called by the housemother. He administered no treatment. The following day she obtained an excuse for her physical-education classes from the doctor and he advised her to take some aspirin. She did not feel well, her head hurt, and she was stiff and consequently she did not attend classes until the following Monday afternoon. She missed swimming classes for a week, but attended all other classes after her absence on Friday and Monday morning. Vivian Teufel testified that she saw Dr. Pfefferkorn four times, on Thursday evening, March 12, 1959, Friday morning, Monday morning, and again on Tuesday. She did not receive treatment at any of these times. On the Saturday following the accident she testified that she saw a Dr. Schueller in Ripon on the advice of friends. At that time she did not feel well, she had a headache and was dizzy and felt as though she were in a daze. She did not talk right, said funny things, and when she played cards was unable to quite hold the cards up. She felt quite weak. Dr. Schueller examined her but prescribed no treatment. She did not consult a doctor again until June of 1959, when she saw Dr. Brussock in order to get a certificate to be a camp counselor. She did not see him for the purpose of any care or treatment with reference to any of the injuries that she received in the accident.

At the trial plaintiff testified that as a result of the accident she had received bruises on both sides of her face, around one eye, a scratch on one eye, bruises on her right

knee, a lump on the back of her head, and that she had hurt her back. Except for continuing headaches all the injuries had healed and left no scars. Her testimony relating to the headaches was that she had experienced intermittent headaches and dizziness several times a day or week during the past year and a half with little or no change except in the past six months she had not had a recurrence of the dizzy spells. That prior to the accident she was in good physical condition and she had no experience of dizziness or headaches, and after the accident she suffered from dizzy spells when she bent over. When she went home for Easter vacation, approximately a month after the accident, she remained at home a week longer than the vacation period because she suffered from headaches and dizziness. She did not, however, consult a doctor at that time.

Vivian Teufel, the plaintiff, testified that she saw Dr. Joseph Mufson in September, 1959. Dr. Mufson was the only expert medical witness called by the plaintiff. He testified that he examined the plaintiff in his office on September 2, 1959. In response to a hypothetical question submitted by counsel for the plaintiff, he said: "It would be my opinion that from the facts as you relate them, that this patient had a cerebral concussion or brain concussion." To the inquiry as to the permanency of the headaches, Dr. Mufson replied: "I feel that if the headaches have persisted for a year and a half, we must consider them as permanent."

The hypothetical questions asked Dr. Mufson incorporated in them the testimony of the plaintiff relative to her subjective injuries as well as the findings contained in the medical report of Dr. Pfefferkorn, which was received in evidence. That report contained a description of the injuries already described along with a prognosis which stated that plaintiff was "recovered," and "not disabled." According to the report, Dr. Pfefferkorn saw plaintiff for the first treatment on March 13, 1959, one day after the

accident, and that the last treatment took place on March 18, 1959, six days after the accident. Dr. Pfefferkorn did not find any cerebral or brain concussion.

We find no merit to the defendant's contention that there was no evidence to sustain the findings of the jury that the plaintiff suffered permanent pain, suffering, and disability. It was for the jury to determine whether or not the medical conclusions of Dr. Pfefferkorn that plaintiff was "recovered" and "not disabled" were medically sound. It was also for the jury to determine whether they believed the testimony of Vivian Teufel relating to her headaches. It is our considered judgment that the medical report of Dr. Pfefferkorn, coupled with the testimony of plaintiff, constituted facts sufficient upon which to rest the medical conclusions of Dr. Mufson. A causal relationship between the injury complained of and the accident was established by the testimony of plaintiff that she had been thrown from the car onto the shoulder of the highway. Her testimony relating to her injuries, specifically those to her head, was corroborated by the medical report of Dr. Pfefferkorn. The proof of future damages rested entirely upon her testimony that her headaches had continued for eighteen months. Whether this testimony is to be believed depends to a considerable extent upon the jury's reaction to plaintiff's demeanor on the stand. Her credibility was for the jury to determine. "The trier of the fact is the judge of the credibility of the witness and the weight to be given to his testimony." *Engel v. Dunn County* (1956), 273 Wis. 218, 221, 77 N. W. (2d) 408.

The second question on this appeal is whether the verdict rendered by the jury for plaintiff's future pain, suffering, and disability is excessive. We have already recounted all of the pertinent evidence bearing upon permanent disability. Plaintiff's only discomfort is that of pain and suffering caused by headaches. She suffers from no other injuries.

Under these circumstances it is our considered judgment that the award of $12,600 for permanent injury is excessive in that the evidence will not support the same. Under such circumstances the rule is that where an excessive verdict is not due to perversity or prejudice, and is not the result of error occurring during the course of trial, the plaintiff should be granted the option of remitting the excess over and above such sum as the court shall determine is the reasonable amount of plaintiff's damages, or of having a new trial on the issue of damages. *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393.

Based upon a careful review of all of the pertinent evidence bearing upon permanent injury, we determine that $3,000 is a reasonable sum to award to the plaintiff for future pain, suffering, and disability. Therefore, the plaintiff should be accorded the option of accepting judgment for such sum, together with the sum of $2,000 awarded for pain and suffering to the date of the trial, or a total of $5,000, or of having a new trial confined to the issue of damages.

*By the Court.*—The judgment is modified by decreasing the amount of plaintiff's damages from $14,600 to $5,000, plus all taxable costs and disbursements, unless within twenty days from November 28, 1961, the plaintiff shall file with the clerk of this court a notice in writing that she elects to have a new trial limited to the issue of damages only. If such notice electing such new trial is timely filed, the judgment will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

FAIRCHILD, J. (*dissenting*). The circuit judge recognized that the propriety of the damage award depended upon belief in plaintiff's testimony as to the recurring and nauseating headaches and in the expert testimony as to their permanence. The circuit judge saw plaintiff and heard the

testimony, and found that it supported the jury's award. Plaintiff has a life expectancy of forty-two years. Under the circumstances, and particularly in view of the trial judge's refusal to set aside the verdict, I am unable to agree that the verdict is excessive.