FREUEN v. BRENNER. [Case No. 223.]
BARTZ v. BRENNER. [Case No. 224.]
BRENNER v. FREUEN. [Case No. 225.]
CALVERT FIRE INSURACE COMPANY v. BRENNER. [Case No. 226.]

*April 3—May 1, 1962.*

448

In all four cases there were briefs by *Arnold, Philipp, Murray & O'Neill* of Milwaukee, on behalf of Joseph G. Brenner, General Accident Fire & Life Assurance Corporation, Ltd., and Potomac Insurance Company, and oral argument by *Suel O. Arnold*.

In these two cases there was a brief and oral argument by *Sydney N. Leshin* of Milwaukee, on behalf of Mae Freuen, Barbara Bartz, and Walter Bartz.

In these two cases there was also a brief by *Wake, Prosser, Zimmermann & Quale* of Milwaukee, on behalf of H. A. Freuen and Home Indemnity Company, and oral argument by *F. H. Prosser*.

In this case there was a brief by *Giffin & Simarski,* attorneys, and *E. J. Simarski* of counsel, all of Milwaukee, on behalf of *H. A. Freuen,* and oral argument by *E. J. Simarski.*

HALLOWS, J.  The first question is whether there is any credible evidence to sustain the verdict that H. A. Freuen was causally negligent. If there is, the verdict should not be disturbed. Freuen testified that he had been driving behind the Oldsmobile and the Plymouth at a speed of approximately 50 to 55 m.p.h. some 200 feet behind the Plymouth. About the distance of two blocks south of the intersection, the Ellis Oldsmobile gave a signal for a right turn and the line of cars started to slow down. As Freuen reached a point about 200 feet from the intersection traveling 35 m.p.h., Brenner, like a blur, went past him and cut sharply in front of him, the right rear bumper of the Ford ripped off the left front fender and part of the bumper of Freuen's Buick and the Ford stopped almost immediately causing Freuen to run into its

right rear end. There is some evidence to support, in part, this version as Lukasavitz testified that while he was traveling 55 to 60 m.p.h. he observed the Brenner Ford in his rear-view mirror getting in front of and ahead of the Buick and then continuing on and passing him. Lukasavitz then braked his car and turned to the right onto the shoulder of the highway in order to avoid colliding with Brenner's Ford which had cut back in line in front of him. Lukasavitz was unaware of the collision between Freuen and Brenner as apparently his attention was centered on his own collision with the Oldsmobile. Mae Freuen, Barbara Bartz, and Walter Bartz had no knowledge of anything material to this issue prior to the impact.

Brenner's testimony was to the effect he approached the scene of the accident about 60 m.p.h. and passed both the Buick and the Plymouth without striking either of them, turned back into the right side of the road when he was about two car lengths past the Plymouth and about two car lengths from the point of impact. There was no oncoming traffic, but Brenner testified the Oldsmobile had signaled for a left turn and then a right turn. Brenner put on his brakes and after he hit the Oldsmobile, Freuen's Buick hit his car. In the meantime the Plymouth, in order to avoid striking Brenner's Ford, had pulled onto the right shoulder and in so doing collided with the right side of the right-turning Oldsmobile. Brenner further testified that as he passed the Buick, it was about one car length behind the Plymouth.

The respondents argue Freuen was not negligent as to management and control and Brenner created an emergency by cutting in in the line of traffic. It seems to us the jury had a right to decide on the conflicting evidence, which is barely summarized here, that Freuen did not have his car under complete management and control either because he was following too closely and not at a safe distance, or he failed to put on his brakes soon enough or hard enough.

Apparently the jury believed Brenner's version of the accident and not Freuen's, which it had a right to do.

The second issue is whether the damages awarded Mae Freuen are excessive. Taking the evidence in the most-favorable light to the plaintiff, as required by *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 92 N. W. (2d) 884, it appears the impact of the collision threw her forward in the car rendering her somewhat unconscious. Freuen removed his wife from the automobile, attempted to stand her up against the car, but she was unable to stand so she was placed in the front seat. Later she walked some 75 to 100 feet to the Ellis automobile and was taken home. She remained in a dazed condition during the evening and complained of pain in the right side of her head and shoulder and could not see television. The following day she consulted the doctor from whom she received daily treatments for a time, and later treated once a week until July of 1956. A medical witness testified she had head pains, severe headaches, blurry vision, a buzzing in both ears, and severe pain in her neck, right shoulder, and back, and found a contusion over her right forehead and a wavering of her eyes. He further testified her hearing was defective in both ears, there was a tenderness and pain over the collarbone and scapula, a limitation of arm and neck movements, and numbness in the fingers of her right hand. The impairment of hearing in the left ear was not caused by the accident but had an earlier origin. This medical witness testified the loss of hearing in the right ear could have resulted from the accident because of the concussion she suffered, the hearing would probably remain defective, and she did have a permanent partial disability in her right shoulder and arm.

An orthopedic surgeon examined Mae Freuen about four years after the accident and testified the right-arm elevation was limited 20 degrees and internal rotation restricted 10 degrees, which restriction was permanent. The medical testi-

mony from an ear specialist who examined Mae Freuen shows that in February of 1956 and again in March, 1961, she had a moderately severe to sense or neural type of hearing impairment producing a 45 to 50 percent impairment, and that between the two examinations of some five years she had lost an additional seven and one-half percent of hearing since 1956. He testified the condition was permanent and was the result of the accident. There was further testimony of an orthopedic surgeon and a neurologist as to the condition of her arm and to the effect that she did not appear to have any remarkable or severe hearing loss. There is other testimony that Mae Freuen had a fall in 1956, after the accident, which resulted in some injuries to her. There was further testimony that she wears a hearing aid in both ears, has difficulty in handling light objects, and for a year after the accident she was unable to do housework or have normal relations with her husband. Before coming in with its verdict, the jury returned to the courtroom to inquire whether the lawyers' fees would be deducted from the amount awarded her. While this incident is not in itself determinative, it must be taken into consideration in evaluating the jury's award.

The determination of damages is difficult at best, but in reviewing the record, we conclude the award of $40,000 is excessive and determine that $30,000 would be a reasonable and just amount. Under the rule of *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, we grant Mae Freuen an option of accepting this amount or having a new trial on the issue of her damages only in Case No. 223. The damages awarded to H. A. Freuen for loss of society and companionship of his wife are questioned as being excessive. We have examined the testimony and we do not find the award of $3,000 under the circumstances of this case is excessive.

Appellants also assign as error the admissibility of certain testimony during the trial. There appears no error in the

admission of Freuen's testimony that his wife could hear perfectly with her right ear prior to the accident. Such testimony was based on observation by a lay person as to the physical condition of another person and is admissible. *Keller v. Gilman* (1896), 93 Wis. 9, 66 N. W. 800; *Feldstein v. Harrington* (1958), 4 Wis. (2d) 380, 90 N. W. (2d) 566. During a recess Lukasavitz was permitted to read a statement he had signed after the accident occurred. The statement was not allowed in evidence and we find no error in allowing Lukasavitz to refresh his recollection.

The admission of the testimony of Dr. Heifetz that the accident could have produced a hearing loss was error as not being a statement to a medical certainty. Such statement is not the equivalent of medical testimony implicit in terms like "I feel" or "I believe" under the circumstances. *Unruh v. Industrial Comm.* (1959), 8 Wis. (2d) 394, 99 N. W. (2d) 182; *Powers v. Allstate Ins. Co., supra; Hintz v. Mielke* (1961), 15 Wis. (2d) 258, 112 N. W. (2d) 720. However, such testimony was not prejudicial in view of Dr. Fox's testimony that the hearing defect was a postconcussional syndrome, or in other words a symptom produced by the accident. Likewise, we find no error in the admission of Dr. Heifetz's testimony that Mae Freuen had posttraumatic neurosis. He was testifying as her treating physician and had previously indicated his basis for the diagnosis and thus a proper foundation was laid. We see no error in permitting Freuen's two attorneys to cross-examine witnesses. Four cases were consolidated for trial, in three of which he was a party. Freuen was represented on different issues by different counsel.

The appellants assign as error the refusal of the trial court to permit Brenner to occupy the position of plaintiff because he had commenced an action in 1956 while the Mae Freuen action was not commenced until 1960. The trial proceeded on the basis Mrs. Freuen was the plaintiff with a right to

open and close. We find no error. Brenner's action was commenced in the civil court and involved a few hundred dollars of property damage. This case was not disposed of for some four years. The cost of the trial of that lawsuit would have been excessive in comparison of the amount involved and apparently the case was allowed to drag along in view of the possible more-important claims to be made by Mrs. Freuen. Trial courts have a discretionary power to consolidate cases for the purpose of trial. *Schmidt v. Riess* (1925), 186 Wis. 574, 203 N. W. 362; *Hein v. Huber* (1934), 214 Wis. 230, 252 N. W. 692; *Braun v. Wisconsin Electric Power Co.* (1959), 6 Wis. (2d) 262, 94 N. W. (2d) 593. We see no error in the trial court's treating the parties in the relationship which they substantially occupied in the litigation.

This disposition of the case results in reducing the damages of Mae Freuen to $30,000 with the option of taking judgment in Case No. 223 for that amount or having a new trial on damages. If she does not exercise such option within twenty days from the date of the remittitur, a new trial shall be granted on the issue of her damages arising from the accident only. If Mae Freuen accepts the reduction of damages, the proper judgments against Brenner and his insurer General Accident Fire & Life Assurance Corporation, Ltd., shall be entered. The judgment for contribution in favor of the appellants and against the interpleaded Freuen and Home Indemnity Company is reversed and a proper judgment should be entered in accordance with the rule laid down in *Bielski v. Schulze,* ante, p. 1, 114 N. W. (2d) 105.

In Case No. 224, the judgment in favor of Barbara Bartz and Walter Bartz against Joseph G. Brenner and his insurer, the appellants, is affirmed, but the judgment for contribution of those appellants against Freuen and the Home Indemnity Company is reversed and judgments for contribution should be entered in accordance with the rule of *Bielski.*

In Case No. 225, the judgment dismissing the complaint with costs and the judgment in favor of Freuen on his counterclaim is affirmed.

In Case No. 226, the judgment in favor of Calvert Fire Insurance Company against Brenner and Potomac Insurance Company is affirmed.

*By the Court.*—In Case No. 223 the judgments are reversed, with directions for further proceedings not inconsistent with this opinion; in Case No. 224 the judgments in favor of the plaintiffs are affirmed and the judgment in favor of the appellants for contribution is reversed, with directions to enter a judgment not inconsistent with this opinion; in Cases Nos. 225 and 226 the judgments are affirmed.