ALBERS, Respondent, v. HERMAN MUTUAL INSURANCE
COMPANY and another, Appellants.

*September 5—October 2, 1962.*

For the appellants there was a brief by *Cornelisen, Denissen, Farrell & Kranzush,* and oral argument by *David J. Condon,* all of Green Bay.

For the respondent there was a brief by *Bittner & Reynolds* of Green Bay, and oral argument by *Robert L. Bittner.*

WILKIE, J. The issues on this appeal are:

1. Is there credible medical evidence to sustain the jury's finding of past and future pain, suffering, and discomfort?

2. If such question be answered in the affirmative, are the damages awarded for such pain, suffering, and discomfort excessive?

3. If such damages are excessive, what is the proper option to extend to the plaintiff as an alternative to granting a new trial as to damages?

In the accident the plaintiff was thrown about in his car although he was not knocked unconscious. He was immediately hospitalized at St. Vincent's Hospital in Green Bay and remained there for a day and a half, during which period his neck was placed in traction. X rays were taken and showed no fractures. After his release from the hospital the plaintiff stayed at home complaining of pain in his neck, the lower part of his back, and his left shoulder. Initially he made weekly trips to his family physician, Dr. Richard Jensen. Later these visits were monthly. In addition to visits to his own physician, the plaintiff received heat therapy and performed prescribed physical exercises at a Green Bay curative workshop. At the time of trial (November, 1961) the plaintiff was still under his physician's care and at the trial the plaintiff still complained of pain in his neck, back, and shoulder. He stated that he could not rotate his head as far to the left as he could prior to the accident and further that he could not raise his left elbow above his left shoulder without pain.

The plaintiff testified that due to these physical limitations he was unable to pursue his usual occupation, that of an automobile mechanic. He was forced to acquire less-strenuous work. He testified that he could no longer hunt, "roughhouse" with his children, or do heavy household tasks such as he had done prior to the accident. He further testified that he had not had one continuous night of sleep since the accident because of the enduring pain. He stated that he had trouble driving long distances in his car. His

wife testified that he had difficulty turning his neck to observe when he backed up.

Two medical witnesses were called at the trial. The plaintiff's attending physician and a general practitioner, Dr. Jensen, testified on behalf of the plaintiff. Dr. Albert L. Freedman, an orthopedic specialist, testified for the defense. Dr. Freedman examined the plaintiff on two different occasions prior to trial (February and October, 1961). The substance of the testimony of these men is as follows: Dr. Jensen stated that the plaintiff had a permanent injury to the fibrous or muscular tissue on the left side of the cervical and upper thoracic spine, consisting of scar tissue where fascial areas have been separated or torn, which caused Mr. Albers' pain, but that he could not prove this by any objective findings. Dr. Jensen stated that the plaintiff had experienced muscle spasms in the area of the cervical spine and in the left side of his neck. The last time there were specific findings of these spasms was in the summer of 1961. Dr. Freedman testified that on the two occasions that he examined the plaintiff he could find no objective evidence of spasm or limitation of motion. He stated that if there were a limitation in motion of plaintiff's left arm and shoulder there would be a finding of atrophy, a wasting away of the muscles involved. Neither he nor Dr. Jensen found any such atrophy. On his first examination Dr. Freedman testified that the plaintiff had more grip in his right than in his left hand, though he was left-handed. He also stated that there was tenderness to pressure in the cervical spine and "the region over the left intervertebral musculature and also to the medial aspect of the left trapezius muscle."

We find no merit to the defendant's contention that there was no credible medical evidence to sustain the finding of the jury that the plaintiff suffered past and future pain, suffering, and discomfort.

The plaintiff unquestionably was injured in the accident. He was in the hospital for one and one-half days, during which time he was in neck traction. He did have muscle spasms for a period even after leaving the hospital, with accompanying pain and discomfort. We have already recounted all of his present complaints and the pertinent findings of the two doctors. On the question of permanent injury Dr. Jensen testified as follows (referring to an examination he made on September 23, 1961):

"*Q.* Now, would you tell the court and jury what you found as a result of that examination, doctor? *A.* At the time of this examination, he still persisted with his pain in his left side of his neck and shoulder. He stated that his headaches, which were of course an initial part of his injuries, had completely subsided. He still had difficulty in getting his left arm above his shoulder level without attempting to help himself with the opposite arm. He had, still, the tilting of his head to the left. I was unable to demonstrate any specific muscular spasm, however, at this time on the examination."

He further testified:

"*Q.* So, doctor, on the basis of having seen and treated this patient for a period of eighteen months, have you been able to formulate a diagnosis as to what his trouble or condition is? *A.* I think my own opinion of this is that he sustained a quite severe whiplash injury originally to his neck. He has had, in view of observing him first on a weekly basis and monthly basis and seeing that although his original muscle spasm has subsided, he still has the aspects of pain on examination in the various areas and he definitely is limited somewhat in what he can do at his work. My own opinion is that he must have—the fact the pain has not subsided over an eighteen-month period—a permanent injury to the fibrous tissue or muscular tissue, fibrous tissue, of the cervical spine on the left side. . . .

"*Q.* I know you have stated your opinion. Now, I would like to pin down for the record: Do you have an opinion now based on a reasonable degree of medical certainty as

to whether or not the condition that you have related and found in the plaintiff, that is, relating to his neck, shoulder, and into his back, do you have an opinion as to whether or not that is temporary, or permanent? *A.* I have an opinion, yes.

"*Q.* Following that, what is your opinion? *A.* My opinion is that it is of a permanent nature."

Under cross-examination, Dr. Freedman testified as follows:

"*Q.* Assuming involuntary muscle spasm as part of my hypothesis here, over a period of sixteen months; that there has been intermittent testing for the muscle spasm in those areas. Now, assuming that as part of my hypothesis—I am asking you to assume that in answering my question—for this continuous period of time, you have to then reach a diagnosis of a permanent injury to the soft tissue in the various areas I have indicated? *A.* I would say that, in assuming all of these factors, that there is a reason, you would have to say probably within the sixteen or eighteen-month period, there is in all probability a permanent thing."

In view of the record, certainly there was sufficient evidence to support the jury's finding of past and future pain and suffering in the instant case.

The case is to be distinguished from the circumstances in *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. (2d) 651. In that case the court held that, where an injury is subjective in character and of such nature that a layman cannot with reasonable certainty know whether or not there will be future pain and suffering, there must be competent expert opinion testimony bearing on the permanency of such injury, or the likelihood that the injured person will endure future pain and suffering, before recovery may be allowed therefor; and that the unsupported subjective statements of the injured party, not a medical expert, are not sufficient.

In the instant case there was sufficient competent medical testimony, independently of the plaintiff's own testimony in terms of his subjective complaints, to support the jury's finding that the plaintiff did sustain a permanent injury to his neck and the left shoulder and as a result of the accident. Therefore, the jury is supported in its determination that there was past and future pain, suffering, and discomfort to the plaintiff and they are supported in bringing back a verdict for the plaintiff.

We now examine the question of whether the $10,000 award for past and future pain, suffering, and discomfort is excessive. It is our considered judgment that the award of $10,000 is excessive in that the evidence will not support the same. It is true that the evidence must be considered in the light most favorable to the plaintiff. The rule was stated in the case of *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 92 N. W. (2d) 884, where our court held, at page 233:

"In considering whether the jury's appraisal of damages for pain, suffering, and disability is excessive, we must of course view the evidence in the light most favorable to plaintiff."

It is also true that the amount of the verdict was brought to the attention of the trial court on motions after verdict and that the court refused to set aside or decrease the award. Here the trial court stated:

"I wish to state, however, that I would have been much better satisfied had the jury found a lesser amount in answer to that inquiry. The amount was generous and liberal, but that does not necessarily mean it is excessive."

Notwithstanding the fact that the trial court did not disturb the award, it is our duty to declare the award excessive where, as here, the award made for plaintiff's past

and future pain, suffering, and discomfort is excessive in that the evidence will not support the same.

Based upon a careful review of all the pertinent evidence bearing upon the plaintiff's injuries, and his past and future pain, suffering, and discomfort, we determine that $6,000 is a reasonable sum to award to the plaintiff for his past and future pain, suffering, and discomfort. Under the rule of *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, the plaintiff should be accorded the option of accepting judgment for such sum, together with the sums awarded for other damages in accordance with the special verdict, or of having a new trial confined to the single issue of damages. Other cases in which verdicts were found by the court to be excessive, and the plaintiffs were given this option, are: *Beijer v. Beijer* (1960), 11 Wis. (2d) 207, 105 N. W. (2d) 348; *Teufel v. Home Indemnity Co.* (1961), 15 Wis. (2d) 67, 111 N. W. (2d) 893; *Freuen v. Brenner* (1962), 16 Wis. (2d) 445, 114 N. W. (2d) 782.

The sum herein determined to be reasonable shall be subject as the other damages to reduction as required to the extent of plaintiff's own negligence.

Accordingly, the judgment appealed from shall be reversed and the cause remanded. The plaintiff shall remit to the trial court, within twenty days from the date of remittitur, the amount of $3,600 (the amount of the reduction here in damages further reduced to give effect to plaintiff's negligence) or on failing so to do, the trial court shall order a new trial on the single issue of damages.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

FAIRCHILD, DIETERICH, and GORDON, JJ. (*dissenting*). We disagree with that portion of the opinion which concludes that the jury's award of $10,000 is excessive, and therefore we dissent.