REDDICK (Beverly), Plaintiff and Respondent, v. REDDICK (Alfred) and another, Defendants and Appellants: PETERSON and another, Interpleaded Defendants and Respondents.*

*October 31—November 28, 1961.*

* Motion for rehearing denied, with $25 costs, on February 6, 1962.

For the appellants there was a brief and oral argument by *Frank L. Morrow* of Eau Claire.

For the respondent Beverly Reddick there was a brief by *Brazeau, Brazeau, Potter & Cole* of Wisconsin Rapids, and oral argument by *Richard S. Brazeau.*

For the respondents Peterson and De Boer there was a brief by *White & White* of River Falls, and oral argument by *Charles E. White.*

DIETERICH, J. Three questions are presented by this appeal:

(1) Was there sufficient credible evidence to support the jury's verdict as to negligence?

(2) Were the damages awarded to the plaintiff, Beverly Reddick, in the amount of $6,000, and the interpleaded defendant, Jean De Boer, in the amount of $500, excessive?

(3) Were any remarks made by plaintiff's counsel in final argument so prejudicial as to require a new trial?

The jury found that defendant, Alfred Reddick, was 100 per cent causally negligent with respect to the accident in question and that Jean De Boer was free from any negligence whatsoever. There was sufficient testimony from which the jury could infer that Reddick was negligent with respect to lookout. It is undisputed that he saw a horse and rider across an open field, galloping toward the highway when he was approximately 600 feet, and the horse and rider approximately 300 feet from the point of collision; that he did not again see the horse and rider until they were 30 to 40 feet from his automobile. Vision was unobstructed and the weather was clear. The horse and rider approached the defendant's automobile from the left. Defendant Reddick had diverted his attention to the right by placing his hand on his wife's leg and kissing her on the face. He did not again see the horse until his wife shouted a warning. His wife testified that the galloping horse was not under control of the rider. If Reddick had kept a proper lookout, he presumably would have observed this situation and taken measures to prevent the collision.

"Having the right of way does not relieve one of the duty of watching the road for vehicles on the highway or entering thereon." *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 348, 99 N. W. (2d) 163.

Because the circumstances leading to the collision could have been prevented by the defendant if he had kept a proper lookout, the emergency rule does not apply to this case. *Wiley v. Fidelity & Casualty Co.* (1958), 3 Wis. (2d) 320, 88 N. W. (2d) 366.

The testimony of Reddick states that he stopped within 60 to 70 feet after the collision; that he did not see the horse and rider the second time until he was within 30 to 40 feet from them and that he was driving approximately 60 miles per hour. After the accident the defendant's car was found resting in a shallow ditch to the right of the

highway. These facts taken together indicate that once the danger was apprehended, Reddick stopped quickly and pulled his car to the right. There is no evidence that he was negligent with respect to management and control. On the contrary, the evidence indicates that he did all he could do to bring his car to a stop.

Although the trial court should have granted the defendant's timely objection to the inclusion of the question as to management and control, it does not constitute reversible error because the defendant was the only party found causally negligent with respect to this accident.

With respect to Mrs. Reddick's injuries, the defendant contends that the evidence does not show a causal relationship between the accident and the injuries Mrs. Reddick sustained. The evidence before the jury was that Mrs. Reddick was thrown under the dash by the collision and sudden stopping of the car. That she suffered pain in the back and leg and that though she continued on to St. Paul, she took pills in order to relieve the pain she experienced. Mrs. Reddick sought treatment from a doctor upon her return to Wisconsin Rapids and later in Stevens Point where she was in traction for eight days. Dr. Burns, the orthopedic specialist who examined the plaintiff eight or nine months later, testified that she had an intervertebral disc protrusion. Mrs. Reddick testified that she was in good health before the accident, but since that time she has experienced pain in her back and been unable to perform household duties which she formerly was able to do. The injury which Mrs. Reddick received was characterized by Dr. Burns as being very painful. Except for the X rays and myelogram ordered by Dr. Burns, all the evidence regarding Mrs. Reddick's injury was subjective. The jury found that $6,000 would reasonably compensate Mrs. Reddick for her injuries.

The jury awarded $500 to Jean De Boer for her injuries. She testified that she suffered a skinned knee at the time of the collision when she was thrown from her horse onto the

concrete pavement and that the injury still causes pain. There were scars on the knee which were exhibited to the jury.

The general rule governing the trial judge or appellate court in determining whether damages are excessive is that since it is for the jury, and not for the court, to fix the amount of the damages, their verdict will not be set aside merely because it is large or because the reviewing court would have awarded less. The court relies upon the good sense of jurors to determine the amount of damages and all that the court can do is to see that the jury approximates a fair estimate. Where the question is a close one, it should be resolved in favor of the jury verdict. *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 103 N. W. (2d) 907. Based on a careful review of the evidence bearing upon the injuries sustained by Mrs. Reddick, and those sustained by Jean De Boer we determine that the findings of damages by the jury are supported by the evidence.

The last contention of the defendant is that the plaintiff's final argument contained prejudicial remarks and that defendant should, therefore, be granted a new trial. The defendant made several objections to plaintiff's final argument. The court sustained at least two objections made by defendant and on several occasions told the jury that they should be guided by the statements of the witnesses rather than the statement of counsel. Because the trial court commented on defendant's objections and in fact sustained some of them, this case does not fall into the situation presented by *Pecor v. Home Indemnity Co.* (1940), 234 Wis. 407, 414, 291 N. W. 313, where the trial court failed to rule on defendant's objections or merely commented, "You may proceed." After reviewing the portions of the argument objected to and the court's rulings and admonitions to the jury, we cannot find that they had a prejudicial effect.

*By the Court.*—Judgments affirmed.