ASHLEY and wife, Plaintiffs and Respondents, v. AMERICAN AUTOMOBILE INSURANCE COMPANY and another, Defendants and Respondents: FEHLANDT and another, Defendants and Appellants.

*January 8—February 5, 1963.*

For the appellants there were briefs by *Kivett & Kasdorf*, attorneys, and *Austin W. Kivett* and *James G. Forester* of

counsel, all of Milwaukee, and oral argument by *Austin W. Kivett.*

For the respondents Ashley there was a brief and oral argument by *Philip Weinberg* of Milwaukee.

For the respondent James C. Thompson there was a brief by *Kluwin, Dunphy, Hankin & Hayes,* attorneys, and *Stanley Z. Dreyer* of counsel, all of Milwaukee, and oral argument by *John A. Kluwin.*

GORDON, J.

*Mrs. Fehlandt's Lookout.*

The most significant issue on this appeal is whether Mrs. Fehlandt was free from negligence as to lookout as a matter of law. In *Carstensen v. Faber* (1962), 17 Wis. (2d) 242, 249, 116 N. W. (2d) 161, we stated that, "When a jury's findings are challenged on appeal, it is the function of this court to sustain them when there is any credible evidence which under any reasonable view supports such findings." The jury determined that Mrs. Fehlandt was negligent as to lookout, and the trial judge affirmed this finding. We approach the question of Mrs. Fehlandt's lookout, therefore, from the standpoint of determining whether there is any credible evidence to support such finding.

Mrs. Fehlandt saw the Thompson car when the latter was stopped at the intersection. At that point, Mrs. Fehlandt was 250 feet north of the intersection and was traveling 45 miles per hour. No other vehicles or other factors were upon the scene which demanded the exclusive attention of Mrs. Fehlandt. Cf. *Meyer v. Mutual Service Casualty Ins. Co.* (1961), 13 Wis. (2d) 156, 160, 108 N. W. (2d) 278. The weather was clear, and both highways were paved and dry. Nothing obstructed the view of either driver.

Mrs. Fehlandt did not observe the Thompson car again until it was partly in her lane of travel and only 28 feet in front of her. She did not observe how the Thompson car got

into that position. She did not see the Thompson car between the time she first saw it stopped at the stop sign on County Trunk C and the next time when it was hazardously in front of her on Highway 45. She estimated that three or four seconds transpired between the two times that she observed the Thompson car. There was testimony by Mr. Thompson that his speed at the time of the impact was approximately 15 miles per hour. In our opinion, these circumstances created a jury issue as to whether Mrs. Fehlandt was negligent as to lookout, and there is credible evidence to sustain the jury's affirmative finding on this question.

One who travels on an arterial may rightfully rely on an assumption that his right-of-way will be respected. However, we have specifically ruled that this does not excuse a driver who has the right-of-way from maintaining a proper lookout. *Gibson v. Streeter* (1942), 241 Wis. 600, 602, 6 N. W. (2d) 662. So, too, in *Gaspord v. Hecht* (1961), 13 Wis. (2d) 83, 87, 108 N. W. (2d) 137, we noted the dignity that must be accorded to the user of an arterial highway but went on to observe that the question of such driver's lookout in that case was for the jury.

In *Wiley v. Fidelity & Casualty Co.* (1958), 3 Wis. (2d) 320, 324, 88 N. W. (2d) 366, we said:

"The plaintiff attempts to place too much reliance on his right to assume that no one would invade his lane of traffic where he had the right-of-way because he was on an arterial highway. A driver cannot rely entirely upon such an assumption."

A similar expression is found in *Reddick v. Reddick* (1961), 15 Wis. (2d) 37, 41, 112 N. W. (2d) 131, where this court quoted from *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 348, 99 N. W. (2d) 163:

"Having the right-of-way does not relieve one of the duty of watching the road for vehicles on the highway or entering thereon."

Our most-recent comment on this facet of automobile law is contained in *Lisowski v. Milwaukee Automobile Mut. Ins. Co.* (1962), 17 Wis. (2d) 499, 508, 117 N. W. (2d) 666, where this court said:

"When one having the right-of-way sees a pedestrian or another car, he may assume the pedestrian or car will observe his right-of-way but if the pedestrian or car does not yield the right-of-way he is under a duty to manage and control his car so as to attempt to avoid the accident. But such a reliance affects primarily management and control or speed and does not affect one's duty to maintain a proper lookout."

Mrs. Fehlandt was obliged to keep an efficient lookout, and she is not wholly relieved of that responsibility because of the fact that she was proceeding upon an arterial highway. Whether her turning in the opposite direction to watch for other traffic during the three-to-four-second interval was negligence presented a jury question. The jury was entitled to find this conduct negligence even though the dominant cause of the ensuing collision was the negligence of Mr. Thompson.

### The Housekeeper's Wages.

The appellants urge that the $620 paid to a housekeeper should not have been included in the medical and hospital expenses. The parties stipulated that the trial judge should answer the questions as to medical and hospital expenses. The court awarded $2,179.81 to Dr. Ashley as compensation for his medical, hospital, and X-ray expenses. In their argument, the appellants assume that the trial judge did in fact include the housekeeper's wages in the aforesaid total. The trial judge gave no itemization of the component parts of the figure which totaled $2,179.81. He labeled such amount as the total damages "for medical, hospital, and X-ray expenses."

The record does not establish that the learned trial judge included nonmedical expenses in this computation. The appellants have postulated certain arithmetical computations in connection with the medical expenses which, including the $620 housekeeper's expense, reach the exact figure determined by the trial judge. However, the trial court did not itemize his award, and we have been unable to determine from the record before us that the $620 was in fact included in the medical-expense figure.

The expense of hiring a housekeeper may properly be included in a question of a special verdict relating to damage for the loss of services and society. *Atkinson v. Huber* (1955), 268 Wis. 615, 622, 68 N. W. (2d) 447; *Selleck v. Janesville* (1899), 104 Wis. 570, 576, 80 N. W. 944.

*Future Medical and Hospital Expenses.*

The appellants contend that the jury's award of $1,250 for Mrs. Ashley's future medical and hospital expenses is excessive. There was evidence at the trial that Mrs. Ashley would be required to undergo surgery on her lower back. Although she lives in Ripon, she received medical treatment after the accident at a hospital in Racine. A doctor testified that the cost of the prospective surgery, if done in Racine, would be $1,500. Another doctor testified that the same operation, if done in Fond du Lac, would cost $725.

In our opinion, the figure of $1,250 as set by the jury is not rendered unreasonable by the fact that her future orthopedic attention could be obtained at a lower cost at a different hospital. There is no rule which would require Mrs. Ashley to go to the nearest hospital, especially in view of the fact that she had previously been treated at the hospital in Racine for this ailment. The appellants have cited no authority in support of their position. We do not deem it unreasonable for Mrs. Ashley to contemplate going to Racine for her

future medical attention, and the jury was entitled to base its valuation on the cost of care at such hospital.

### The Loss of Earnings.

The respondents Ashley argue that there is error attendant to the jury's finding that Dr. Ashley incurred no loss of earnings. We agree that it was immaterial whether Ripon College actually paid Dr. Ashley his salary during the period of his disability after the accident. In *Prunty v. Vandenberg* (1950), 257 Wis. 469, 480, 44 N. W. (2d) 246, this court stated:

"It is the prevailing doctrine in this country that where the salary of an injured person is continued by his employer during the time of his inability to perform services, such payment is no ground for diminution of the damages to be paid by the one who has caused the injury."

Thus, it is immaterial whether the salary of an injured person is actually paid by his employer during the time of his inability to perform his services, and the court erred in allowing him, over objection, to be interrogated as to whether his full salary was paid during the period of his disability.

It was also error for the trial court to refuse to instruct the jury, upon the plaintiffs' formal request, that the foregoing principle applied in this case.

The testimony is clear that Dr. Ashley had disability to some extent during a period of approximately six weeks. He spent the first two weeks after the accident in the hospital. The jury's finding that there was no wage loss reflects a misapprehension of the law and undoubtedly stems from the improper evidence which was received and the failure to instruct as aforementioned.

Dr. Ashley's counsel urges that this court should determine that the loss of earnings totaled $1,025. However, we cannot find as a matter of law that a full six weeks of disability was incurred, since Dr. Ashley performed some services during

this six weeks' period. The question of how long and to what extent a person is unable to carry on his usual occupation is a fact question to be decided by the jury. *Kowalke v. Farmers Mut. Automobile Ins. Co.* (1958), 3 Wis. (2d) 389, 404, 88 N. W. (2d) 747. We would normally remand this issue for a new determination by the jury under proper instructions. However, Dr. Ashley's counsel has stated on oral argument that he did not desire a new trial on the question of damages. We conclude that the question cannot be answered as a matter of law, and since a new trial is not requested by Dr. Ashley, we find that the error has been waived.

### *The Application of Bielski v. Schulze.*

The respondent James C. Thompson contends that this court's rule in *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105, works an injustice insofar as it changed the formula in respect to contribution as to pending causes of action. We are now asked to amend the *Bielski* rule so that the doctrine would apply only to accidents occurring after the date of that decision or after some specific prospective date.

It is true that this court has made certain rulings apply prospectively only; see, for example, *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618, and *Kojis v. Doctors Hospital* (1961), 12 Wis. (2d) 367, 373, 107 N. W. (2d) 131, 107 N. W. (2d) 292. Whenever this court alters existing rules, it is obviously essential that the court must determine the time that such modification shall be operative. It is unavoidable that any change will benefit certain interests to the detriment of others. This court carefully concerned itself as to which would be the more-equitable course in setting the timetable for the application of the *Bielski Case*. Even if we now were of the opinion that such timetable was wrong (which we are not), to amend it at this time would lead to confusion as well as injustice. The *Bielski*

*Case* was decided on March 6, 1962, and courts all over the state have been applying it since that time. We are not aware of any valid justification for the change now proposed by the respondent Thompson.

### Violation of Court Rules.

Both the plaintiffs-respondents and the appellants have moved for the imposition of double costs upon the other for alleged violations of the rules of this court. On behalf of Dr. and Mrs. Ashley, it is charged that the statement of facts is not the "clear and concise" statement contemplated by Supreme Court Rule 6 (3), sec. 251.26, Stats. It is contended that the appellants failed to comply with the provision of the same rule which requires reference to the page of the appendix for those statements of fact "as to which there is a possibility of dispute." Our examination of the appellants' statement of fact satisfies us that the foregoing charges are without any merit.

The Ashleys also contend that there are misstatements of evidence in the brief of the appellants. It is true that Mrs. Fehlandt's brief does contain two printing mistakes; however, both such mistakes appear inadvertent and were corrected before the case was argued.

The respondents further point out that Supreme Court Rule 6 (5) (d), sec. 251.26, Stats., has been ignored. This rule requires that all exhibits, whether printed or not, be indexed. Failure to comply with this rule had no significance upon the instant appeal, did not burden this court in its consideration of the appeal, and does not constitute a material violation of the rules of this court in the instant case.

The appellants' request for double costs is based upon their contention that 80 percent of their brief was devoted to "correcting specific misstatements made in the respondents' brief." Our Rule 10, sec. 251.264, Stats., provides that double costs may be ordered where the rules "have been

flagrantly disregarded or there is an absence of a good-faith attempt to comply therewith." This does not apply to the instant case, and there is no need to assess double costs against either the respondents Ashley or the appellants.

*By the Court.*—Judgment affirmed.