ERDMANN, Respondent, v. MILWAUKEE AUTOMOBILE MUTUAL INSURANCE COMPANY and another, Appellants.

*June 5—June 28, 1963.*

440

For the appellants there was a brief and oral argument by *D. J. Regan* of Milwaukee.

For the respondent there was a brief and oral argument by *Milton S. Padway* of Milwaukee.

DIETERICH, J. No questions of negligence are before this court. The only issue we need consider on this appeal is whether the damages awarded by the jury are excessive.

The relevant facts are that on September 15, 1958, the defendant, Herbert Rottloff, driving his automobile north on North Thirty-Fifth street in the city of Milwaukee, stopped at West Wells street for a red light immediately behind the automobile driven by the plaintiff, Petra Erdmann. When the light turned green Rottloff placed his car in motion and struck the rear bumper of the plaintiff's car, injuring the plaintiff. The damages to the plaintiff's car were minor, amounting to $27.

The record reveals the following testimony of Mrs. Erdmann: That she is a widow, fifty years old at the time of the collision, and employed as a bookkeeper. Her health

was good before the accident. When the collision occurred her head was "jerked back and forth" and her "chest hit the steering wheel."

After the accident she talked briefly to Rottloff and went home, at which time she became nauseated and her head, arms, and legs began to ache and her back hurt. She took aspirin, rubbed her neck, took hot baths and lay on an electric pad.

She was not able to sleep that night and the next day worked until noon. The following day she also worked one-half day after which she resumed working full time.

Mrs. Erdmann consulted a Dr. Reinke for the first time on September 29, 1958. He prescribed heat and massage which temporarily relieved her headaches and pain in her back. Upon further complaints of headaches, she was referred to Dr. Roncke, an eye doctor, for further relief of her headaches and dizziness. He examined her and sent her back to Dr. Reinke.

She was then referred in March of 1959 to Dr. Collopy. He took X rays and ordered traction, massage, and heat treatments. After four head-traction treatments she obtained a home-traction harness and used that on advice of Dr. Collopy. About a month and a half before the trial on July 5, 1962, she had to discontinue using the apparatus as it caused nausea and discomfort. At the time of the trial, she, pursuant to Dr. Collopy's advice, would lie on the bed and allow her head to hang down. All these various treatments have been able to give only temporary relief.

Mrs. Erdmann changed jobs in April of 1959 in order to avoid work with an adding machine as it made her dizzy to use one. She is unable to sleep a full night without experiencing pain; her neck hurts when she turns her head from side to side, she experiences pain at the back of her neck when she holds her head in one position for a period of

time and has ceased to read. Since the accident she has not had one day of relief from these pains.

On cross-examination, Mrs. Erdmann testified that she had been in a second automobile accident July 16, 1961, while on a trip to Montana with some friends. She was not injured though the car was damaged. During the trip she and a friend would alternate driving every 100 miles. After driving for approximately an hour she experienced neck pains and headaches. Neck pain also occurred when she turned her head in either direction.

At the time the accident of September 15, 1958, occurred she lived at home with a son and kept house for the two of them. Since the accident she has made several trips by auto to Minneapolis to visit her son who was attending college there. She also drives to Oconomowoc frequently and drove to Fond du Lac at Christmas, 1959. During all these trips she continued to have neck pain and headaches.

Dr. Reinke, a general practitioner, testified substantially as follows: That he examined Mrs. Erdmann on September 29, 1959. She complained of pain in the back of the neck and in the midback, and when she turned her head she became dizzy and was in pain. His examination of her back and neck elicited pain. X rays were taken under his direction. No injury was revealed by the X rays. Considering her story of the accident and her subjective symptoms he made a diagnosis of "whiplash injury." He prescribed heat treatments and massage. The last treatment occurred on October 20, 1958. No progress was made and he referred her to Dr. Collopy, an orthopedist.

On cross-examination, Dr. Reinke testified that the X rays did show a degenerative condition of the spine and some calcification near the right upper abdomen as a result of which he advised she have a gallbladder examination. The record, however, reveals no such examination.

Dr. Collopy, an orthopedic surgeon, testified that Mrs. Erdmann gave him her history of the accident, the resultant pain, and the unsuccessful treatment prescribed by Dr. Reinke. She stated to him that she had headaches and awakened at night with a kink in her right shoulder and neck. His examination revealed some generalized tenderness on the right and left side of the neck; that forward and backward bending were within normal limits, but the extremes of bending produced pain as did rotation of the neck. X rays of the cervical spine showed some narrowing of the inner spaces of the cervical spine. An examination at a later date revealed muscle spasm in the trapezium muscle along the border of the neck. That degeneration of the cervical spine may or may not produce pain in and of itself. This can be determined from the medical history of the patient. Mrs. Erdmann's medical history revealed no pain in the back until after the accident.

Dr. Collopy prescribed treatment consisting of traction to the neck, heat treatments, and massage. Later he prescribed a traction apparatus to be used at home. Her condition improved but did not clear up entirely. His diagnosis was that she had suffered a whiplash injury and that such injury did not clear up because of the pre-existing arthritic changes which were aggravated by the accident. In Dr. Collopy's opinion, Mrs. Erdmann sustained some permanent disability which limits rotation of the neck and produces pain.

Dr. Elliot Coles, an orthopedic surgeon, testified for the defense. He examined Mrs. Erdmann on June 12, 1962. She related to him substantially the same medical history she had previously related to Dr. Collopy. Dr. Coles' examination revealed tenderness to firm palpation over the cervical muscles in the back and pain caused by right and left lateral bending of the neck. X rays were taken and in Dr. Coles' opinion did not reveal any narrowing of the intervertebral spaces of the disc. He did find early osteo-

arthritic lipping of the third segment anteriorly, which he said may have been caused by the accident. He also noticed a cervical rib on the right side which might account for Mrs. Erdmann's symptoms. In his opinion she had long since recovered from the effects of the mild cervical strain sustained on September 15, 1958, and her continuing complaints could be explained to an anxiety tension state involving the muscles of the neck region and both shoulder girdles.

On cross-examination, Dr. Coles stated that most people over fifty years of age have some osteoarthritis in the neck. He said that the anxiety tension state could result from injuries sustained in an accident and that this anxiety would be indefinite in duration and as disabling as an obvious fracture.

The answer admitted the allegations of the complaint alleging that the plaintiff was free of negligence and did in no way contribute to the accident. No issue was made of negligence and only the damage question was submitted to the jury.

The general rule governing the trial judge or appellate court in determining whether damages are excessive is stated in *O'Brien v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 551, 559, 117 N. W. (2d) 654:

" ' . . . that since it is for the jury, and not for the court, to fix the amount of the damages, their verdict will not be set aside merely because it is large or because the reviewing court would have awarded less. The court relies upon the good sense of jurors to determine the amount of damages and all that the court can do is to see that the jury approximates a fair estimate. Where the question is a close one, it should be resolved in favor of the jury verdict. *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 103 N. W. (2d) 907.' *Reddick v. Reddick* (1961), 15 Wis. (2d) 37, 43, 112 N. W. (2d) 131."

We consider that the following instructions given by the trial court to the jury were adequate in view of the evidence.

"In your determination of your answer to subdivision (d) of the question, you cannot award any damages for any pre-existing condition except insofar as you are satisfied that such condition has been activated as a natural result of the collision in question. . . .

"You are instructed that if you are satisfied by the greater weight of the credible evidence in this case and to a reasonable certainty that the plaintiff, Petra Erdmann, will in the future and for any appreciable period in the future suffer any permanent results in the nature of pain and suffering or discomfort resulting directly from such injuries as you may find she suffered in the collision, you may assess damages for such future results, if any, and include such damages in answer to subdivision (d) of the question submitted to you in this special verdict."

The award of $10,000 damage was agreed upon by 11 of the 12 jurors and approved by the trial court. The testimony in this action indicates that the injury complained of was substantially revealed by subjective symptoms. Hence, the award of damages made by the jury depended a great deal upon the credibility of Mrs. Erdmann. The jury chose to believe her and to believe her medical experts. The trial court did not find her testimony incredible and stated in its memorandum opinion that "from a careful review of all of the testimony this court cannot say that the damages so determined are excessive."

The rule is that when there is any credible evidence which under any reasonable view supports the jury finding, especially when the verdict has the approval of the trial court, it should not be disturbed. *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. (2d) 487, 120 N. W. (2d) 692.

We apply the rule in the instant action and affirm the judgment of the trial court. Under the circumstances, other questions become moot.

*By the Court.*—Judgment affirmed.

CURRIE, HALLOWS, and WILKIE, JJ. (*dissenting*). We agree with the majority that the sole issue to be considered on this appeal is whether or not the damage verdict of $10,000 is excessive. We are satisfied that the entire record viewed most favorably to the plaintiff [1] does not support the verdict. [2] We consider the verdict excessive and would invoke the *Powers* rule, [3] thus ordering a new trial but granting an option to the plaintiff to take such lesser sum as the court would consider reasonable.

The majority opinion states that, "The testimony in this action indicates that the injury complained of was substantially revealed by subjective symptoms." Indeed, the only permanent injury testified to here was the pain arising from the aggravation of a pre-existing narrowing of the intervertebral disc.

While we agree with the rules quoted by the majority from the *O'Brien* and *Springen Cases, supra,* we are of the opinion that the award is beyond the range of reasonably debatable amounts [4] for such pain as may be attributable to the aggravation of the pre-existing condition. For this reason we believe that the verdict is excessive despite the fact that the trial court has approved the award.

[1] *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 92 N. W. (2d) 884.

[2] Cases in which this court, since the *Powers* rule, has found the verdict excessive and not supported by the evidence are: *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393; *Beijer v. Beijer* (1960), 11 Wis. (2d) 207, 105 N. W. (2d) 348; *Teufel v. Home Indemnity Co.* (1961), 15 Wis. (2d) 67, 111 N. W. (2d) 893; *Freuen v. Brenner* (1962), 16 Wis. (2d) 445, 114 N. W. (2d) 782; *Albers v. Herman Mut. Ins. Co.* (1962), 17 Wis. (2d) 385, 117 N. W. (2d) 364.

[3] *Powers v. Allstate Ins. Co., supra.*

[4] *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 103 N. W. (2d) 907.