Smith, by Guardian *ad litem,* Plaintiff and Respondent, v. Rural Mutual Insurance Company, Defendant and Appellant: Foss, Impleaded Defendant and Respondent.

*September 4—October 1, 1963.*

594

For the appellant there was a brief by *Rogers & Owens* of Portage, and oral argument by *Bruce J. Rogers*.

For the respondent there was a brief by *Vaughn S. Conway* and *Kenneth H. Conway,* both of Baraboo, and oral argument by *Vaughn S. Conway*.

For the impleaded respondent there was a brief by *Dithmar & Greenhalgh* of Baraboo, and oral argument by *Robert L. Greenhalgh*.

BROWN, C. J. On appeal appellant raises these following issues:

(1) Whether there was credible evidence to sustain the jury's finding that a person other than respondent was driving the vehicle in which she was an occupant at the time of the accident.

(2) Whether sec. 48.38 (1), Stats., prohibiting the admission in evidence against a child in another action of the disposition of such child's juvenile case, constitutes a denial of due process and equal protection of the law under federal and state constitutions.

(3) Whether certain rulings of the trial court as to the admissibility of evidence were proper.

(4) Whether the release executed between appellant, respondent, and impleaded respondent precluded contribution.

(5) Whether impleaded respondent was negligent as a matter of law.

(6) Whether certain statements to jury were improper warranting a new trial.

(7) Whether a new trial is warranted in the interests of justice.

(1) *Sustaining the jury's findings.* The collision occurred at the intersection of U. S. Highway 12 and County Trunk Highway W, Sauk county, Wisconsin, about 10 p. m., August 30, 1959. The Thiede car, in which plaintiff was an occupant, was traveling west on County Trunk W. It had stopped at the intersection with Highway 12 and was crossing the intersection in an attempt to make a left-hand turn south on Highway 12 when it was struck on the left side by the Foss car traveling north on Highway 12.

The other occupants of the Thiede car were: Delbert Thiede, age seventeen, son of Ben Thiede; Russell Hankins, age sixteen; Naomi Markley, age sixteen; and Donald Marklein, a minor, who died of injuries.

The record shows that the evidence concerning who was driving the Thiede car is in conflict. On the day in question, Delbert Thiede had permission to use the Thiede car. Early in the afternoon he picked up Donald Marklein at Sauk City, and drove to Baraboo and picked up plaintiff-respondent Carol Ann and Naomi Markley with whom he and Marklein had dates. Thiede and Carol Ann rode in the front seat and Marklein and Naomi Markley were at all times in the back seat.

Thiede drove to Sauk City, and after they attended a corn festival they stopped at the Caflisch Shell station about 7 p. m. where Russell Hankins joined them. Hankins sat in the front seat of the car.

It is undisputed that Thiede and Carol Ann took turns driving the car and that they were the only ones who drove it. Just prior to the accident Thiede drove to Baraboo and stopped at a Clark station where Marklein purchased some gas. The Clark station attendant, Gerald Collins, testified that Thiede was behind the steering wheel when the gas was

purchased, and leaned over to put the Clark premium stamps he had received into the glove compartment. He did not see anyone moving around the left side of the car.

Carol Ann and Naomi Markley testified that Thiede drove the car from the Clark station to the intersection where the car was stopped before entering the junction with Highway 12. Miss Markley remembered nothing further.

Carol Ann remembered Thiede's putting the car in gear at the stop sign and remembered nothing further until she came to at the hospital. At the trial she was confronted with a statement recorded by an insurance adjuster and signed by her on September 9, 1959, in the hospital, which states:

"The last thing I remember is asking Delbert if I could drive the car. He consented and I remember exchanging seats with him and getting behind the steering wheel. The next thing I can remember is coming to in this hospital room, a day or so later after the accident."

Delbert Thiede did not remember who was driving at the time of the accident, but testified he was sitting in the middle of the front seat at that time. He testified that respondent must have been driving because he never let anyone else drive.

Russell Hankins did not remember who was driving the car at other times during the evening, but testified that Carol Ann was driving when the car left the stop sign and proceeded into the intersection.

Based on the testimony the jury found that someone other than respondent was driving the Thiede car. Appellant, however, considers that this finding is not supported by any credible evidence in the record.

In connection with the finding of the jury that respondent was not driving, appellant considers it error for the trial court not to have instructed the jury concerning the weight given to positive and negative testimony.

The testimony of Russell Hankins pertaining to the driver of the Thiede car, although positive in form, is very weak in substance. Hankins had no recollection of who was driving the car during other periods of the evening. His testimony also contains many other complete lapses of memory concerning his activity of that day and evening. At one point during his testimony the court, without the presence of the jury, admonished him because it was of the opinion that he was not telling the truth. In its assessment of the testimony of Hankins, the court said:

"The witness Hankins was obviously not too intelligent. There was reason to believe that he might even be mentally retarded. In his testimony he was unable to state who was driving at any time during the entire afternoon or evening except that he placed Carol Ann Smith as driving at the moment of the accident. The Court felt that he based this statement more on the fact that the car jumped a little when it was engaged in gear than upon any observation that he actually made. In view of his obvious mental condition and in view of his inability to remember who was driving at any other time that day, the Court does not feel that his testimony is so much more credible than that of the other witnesses as to require a change of the answers on that ground alone."

Assuming that the testimony of Hankins was equally credible to that of the negative testimony, the failure of the court to give the proper instruction would technically be error; however, it would not be grounds for a new trial unless it was prejudicial. Sec. 274.37, Stats. In view of the weak nature of the positive testimony this error cannot be considered prejudicial to appellant.

On appeal we accept that version of the evidence that is most favorable to the prevailing party. *Mustas v. Inland Construction, Inc.* (1963), 19 Wis. (2d) 194, 201, 120 N. W. (2d) 95, 121 N. W. (2d) 274. Assuming the credibility of the testimony of Carol Ann, Naomi Markley, and

Gerald Collins, a reasonable inference can be drawn that respondent was not driving the Thiede car at the time of the accident. Therefore, the verdict of the jury is clearly supported by credible evidence in the record.

(2) *Validity of sec. 48.38 (1), Stats.* At the conclusion of the cross-examination, respondent was asked if as a result of the accident her driver's license was suspended. She answered "Yes." No objection to the question was made, but after several questions on redirect examination, objection was made. The trial court ruled the question improper, struck the question and answer from the evidence, and instructed the jury to disregard the question and answer.

The question and answer concerning the revocation of respondent's driver's license were struck pursuant to sec. 48.38 (1), Stats., which provides:

"No adjudication upon the status of any child in the jurisdiction of the juvenile court shall operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any such child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction. The disposition of any child's case or any evidence given in the juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence disqualify a child in any future civil service examination, appointment or application."

Appellant urges us to hold that this statute is unconstitutional because it violates the due-process and equal-protection clauses of both the federal and our state constitutions.

The Children's Code, ch. 48, Stats., was enacted by the legislature for the promotion of the best interests of the children of the state. Sec. 48.01 (2), Stats. Prohibiting the admission into evidence of juvenile proceedings into other courts of the state is an implementation of this express purpose. This statute, as the statutes in other states, is based

upon a strong social policy to protect the child. *Thomas v. United States* (App. D. C. 1941), 121 Fed. (2d) 905, 908. The legislature has the power to provide for reasonable rules for limiting the admission of evidence, and statutes similar to sec. 48.38 (1) are considered to be within that power. *Kozler v. New York Telephone Co.* (1919), 93 N. J. Law 279, 280, 108 Atl. 375, 376. Therefore, the enactment of sec. 48.38 (1) is not an unconstitutional denial of due process by the legislature.

Historically, the law has always recognized children as a valid classification of people. Its validity is based upon the strong social policy of the necessity to protect them. This classification does not cause any undue hardship to appellant and cannot be considered an unconstitutional denial of equal protection of the laws.

(3) *Admissibility of evidence.* (a) *Admission of traffic report in evidence.* A traffic report of the accident was completed by the officer or his subordinates and placed on file in the office of the Sauk county highway police. Appellant offered pages 1 and 4 of the report, but the court refused to admit them on the ground that such pages contained conclusions. Appellant claims that these pages are admissible and that it was error to deny their admission.

Sec. 327.18 (1), Stats., provides as follows:

"*As evidence.* Every official record, report or certificate made by any public officer, pursuant to law, is evidence of the facts which are therein stated and which are required or permitted to be by such officer recorded, reported or certified, except that the record by the county clerk of license or certificate under s. 147.23 or 153.05 [Stats. 1941] shall not be evidence on behalf of the licensee or certificate holder without production of the license or certificate or competent evidence from the board or body that issued the same."

We have held that conclusions stated in official records are not admissible under this section. *Estate of Eannelli*

(1955), 269 Wis. 192, 212, 68 N. W. (2d) 791; *Jacobson v. Bryan* (1944), 244 Wis. 359, 368, 12 N. W. (2d) 789.

If an official cannot testify upon the witness stand to the facts contained in the report, the statute does not apply and the report is inadmissible. In the present case, the police officer could not testify to any of the facts in the report because they were not within his own personal knowledge but were given to him by Naomi Markley who was present in court. Therefore, it was proper to exclude the traffic report from the evidence.

(b) *Admission of statements to investigating officer.* Captain Wyatt, the officer in charge of the Sauk county highway police, participated in a follow-up investigation of the accident at the hospital in ascertaining names, ages, and other facts not completed at the scene of the accident. The name of the driver of the Thiede car was obtained by him from Naomi Markley on September 1, 1959.

Appellant offered to prove the name of the driver by having this statement introduced. The court deemed this offer of proof as being hearsay. On appeal, appellant considers this ruling erroneous.

The statement of Naomi Markley would have been admissible if a relationship of privity, agency, or joint interest existed between her and respondent. See 2 Jones, Commentaries on Evidence (2d ed.), p. 1646, sec. 898. However, the record does not show that such a relationship existed so that the statement could qualify for what is referred to as the vicarious-admission exception to the hearsay rule. 14 Vanderbilt Law Review (1961), 855. The statement could have been used, however, for impeachment purposes if the proper foundation had been laid.

(c) *Testimony of doctor.* Dr. John Siebert testified for respondent concerning the mental condition of respondent on the day the statement of the insurance adjuster was taken

from her. He was asked whether restraints were applied to restrain respondent in her bed. Dr. Siebert then asked whether he could refer to his nurse's notes in answer to that question. The court then instructed him, after objection, that he could not refer to notes taken by someone else. Later, Dr. Siebert referred to the nurse's notes, but the court immediately struck his answer. Appellant now complains that Dr. Siebert was referring to unauthenticated notes and that his testimony concerning the content of those notes is not admissible. This complaint is without merit because the record does not show that the testimony of Dr. Siebert in referring to his notes was admitted by the court.

On another occasion Dr. Siebert was asked when the pelvic sling was attached, and he answered that it was on September 10th. Counsel then asked if it were applied on the 9th or the 10th of September. Dr. Siebert, apparently correcting his prior statement, said that it was the 9th of September. Appellant's counsel made no objection to the answer at the time but now states that the doctor was again referring to unauthenticated notes. This contention is also without merit because again the record does not show that the doctor's testimony was based upon unauthenticated records.

(4) *Release precludes contribution.* On January 8, 1960, the sum of $1,500 was paid to Donald C. Foss to settle a claim against appellant. A release was executed which discharged Carol Ann, Ben Thiede, as well as appellant. The release contained no reservation of rights by the settlor to assert claims for contribution in case of liability. This present action was commenced on October 31, 1961. Appellant argues that the release did not preclude it from obtaining contribution if the impleaded respondent is found to be negligent.

The law is well settled in Wisconsin that an insurer of a tort-feasor can settle with the injured party and then bring an action against the other joint tort-feasor for contribution.

*State Farm Mut. Automobile Ins. Co. v. Continental Casualty Co.* (1953), 264 Wis. 493, 501, 59 N. W. (2d) 425. An insurer who enters into a settlement with a tort-feasor not its insured and who later makes a settlement with the injured party can subsequently claim contribution from the tort-feasor with whom it had earlier settled. *Ohio Casualty Ins. Co. v. Nauth* (1958), 5 Wis. (2d) 518, 520, 93 N. W. (2d) 514. However, in those cases the settlement does not include the insurer of one tort-feasor, the injured party and the other tort-feasor, as is the case in the present claim for contribution. If two parties to an accident enter into a compromise settlement for damages the party giving payment is estopped, unless reserving the right, from later suing for its own damages. *Wm. H. Heinemann Creameries v. Milwaukee Automobile Ins. Co.* (1955), 270 Wis. 443, 71 N. W. (2d) 395, 72 N. W. (2d) 102. The effect of the settlement in the release agreement in the present case was that appellant, respondent, and Ben Thiede had a defense to any action for negligence brought by the impleaded respondent. Conversely, appellant, respondent, and Ben Thiede were estopped from bringing an action for negligence against the impleaded respondent. The release did not affect any rights as between respondent and appellant.

The social policy favoring settlements is stronger than that favoring contribution among tort-feasors. Here the injured party (respondent), the insurer of the driver (appellant), and the prospective joint tort-feasor (impleaded respondent) participated in making the release. To allow the insurer to implead the prospective joint tort-feasor for contribution unless it was reserved in the release, would be contrary to natural principles of justice under these circumstances.

The trial court denied the impleaded respondent's motion for dismissal of the impleader action brought against him. Because the impleaded respondent was not a proper party defendant that motion should have been granted.

.

(5) *Negligence of impleaded respondent.* Appellant contends that the impleaded respondent was negligent as a matter of law with respect to having his car equipped with sufficient headlights or as to lookout.

The undisputed testimony is that his headlights were on, and there is no showing in the record that his headlights were insufficient.

With respect to his duty of lookout while driving on Highway 12, the impleaded respondent had the right-of-way over traffic coming from Highway W. He could assume that the Thiede car would observe his right-of-way. *Ashley v. American Automobile Ins. Co.* (1963), 19 Wis. (2d) 17, 22, 119 N. W. (2d) 359. When the Thiede car did not observe this right-of-way he was under a duty to manage and control his car so as to attempt to avoid the accident. The impleaded respondent testified he first saw the Thiede car when it began to proceed across his lane. At that time he was 30 to 45 feet away from the Thiede car going 55 miles per hour. The normal time distance within which the average driver reacts in one second going 55 miles per hour is 81 feet. Therefore, the impleaded respondent would not have had time to apply his brakes to stop his vehicle. In reference to alleged negligence on the part of impleaded respondent, the trial court stated:

"There is absolutely no evidence upon which any finding of negligence by Foss could be sustained, and if the jury had found him negligent the Court would feel compelled to change the answer."

The finding of the jury that impleaded respondent was not negligent is clearly not against the great weight and clear preponderance of the evidence and should be sustained. Had the jury found him negligent and had the trial court changed the answer we would have sustained this change for the

record, as the learned trial court pointed out, does not show any evidence that impleaded respondent was negligent.

(6) *Statements to jury.* At the opening of the trial and in the course of the opening statement, the attorney for the impleaded respondent commented to the jury upon the settlement made by appellant with Foss, the impleaded respondent. Appellant immediately objected and moved for a mistrial which was denied by the court.

After closing arguments by counsel for appellant and impleaded respondent, counsel for respondent, in rebuttal, argued that the prior settlement by appellant with the impleaded respondent was an admission that Foss was not negligent. Appellant objected and moved the court to instruct the jury to disregard it, which motion the court denied.

On appeal, appellant contends that these statements before the jury were improper and prejudicial, and that the trial court should have granted its motion or should have granted a new trial.

A motion for a new trial upon the ground of improper conduct of counsel in making statements before the jury is addressed to the discretion of the trial court. *Klein v. State Farm Mut. Automobile Ins. Co.* (1963), 19 Wis. (2d) 507, 510, 120 N. W. (2d) 885. In such matters the trial court has wide discretion and the appellate court will not interfere with its exercise unless there has been an abuse of discretion. 5A C. J. S., Appeal and Error, p. 113, sec. 1611. In the case before us we do not find such abuse. It was within the trial court's discretion to allow the trial to proceed and at the conclusion of the trial determine whether the improper references to and comments upon the settlement had produced prejudice as reflected in the verdict. Prejudice, if any existed, would then manifest itself and the court could then right the matter by ordering a new trial. *Roeske v. Schmitt* (1954), 266 Wis. 557, 572, 64 N. W. (2d) 394.

If there had been evidence to support a finding that to some degree Foss had been causally negligent there might be reason to think that a finding of *no* negligence on his part was the result of the improper remarks. As it is, there was no such evidence and the improprieties could not be a factor in the deliberations of the jury. The evidence, only, required the finding that Foss was not causally negligent and the entire negligence was on the part of the other driver. As the learned court said, it would have been compelled to change the answer of the verdict if it had found Foss guilty of causal negligence.

Accordingly, we find that the trial court did not abuse its discretion in denying the motion for a mistrial or for a new trial.

(7) *New trial in interests of justice.* Appellant desires to have a new trial granted in the interests of justice pursuant to sec. 251.09, Stats. It contends that due to the errors in the record the verdict is contrary to the interests of justice. In our opinion, the errors which do exist are not sufficient to compel us to order a new trial.

Since our conclusion is that judgment must be affirmed, it is unnecessary for us to reverse the order denying Foss' motion to dismiss the action as to him.

*By the Court.*—Judgment affirmed.