BURKE, by Guardian *ad litem,* and another, Respondents,
v. NATIONAL FARMERS UNION PROPERTY & CASUALTY
COMPANY and another, Appellants.

*October 3—October 31, 1967.*

For the appellants there was a brief by *Petersen, Sutherland, Axley & Brynelson,* and oral argument by *James C. Herrick,* all of Madison.

For the respondents there was a brief by *Callahan, Arnold & Van Metre* of Columbus, and oral argument by *Carroll B. Callahan.*

WILKIE, J. Three issues are raised on this appeal:

1. Is there credible evidence to support the jury's determination that Hamann was causally negligent?

2. Did the trial court err in refusing to give certain requested instructions?

3. Are the damages excessive?

### *Negligence of Hamann.*

As to the first question of Hamann's causal negligence the standard of review invoked by this court is familiarly stated:

"The rule is well established that a verdict or a finding of a jury will not be set aside or disturbed, 'if there is any credible evidence which under any reasonable view fairly admits of an inference that supports the jury's finding.' *Van Galder v. Snyder* (1948), 254 Wis. 120, 123, 35 N. W. (2d) 187. 'The familiar rule, often declared by this court, that where there is credible evidence to support a finding of a jury we may not disturb it, needs no citation of au-

thorities.' *Mossak v. Pfost* (1950), 258 Wis. 73, 75, 44 N. W. (2d) 922." [1]

The record clearly establishes that there is credible evidence to support the jury's finding of negligence on the part of Hamann.

This case is unique in that no witness actually saw the impact. Three potential witnesses who were involved in the accident (the plaintiff and Hamann's two passengers, schoolchildren he had just picked up at school) were not called to testify. The only testimony elicited during the trial which bore upon the negligence question was given by Hamann (who did not see the accident but said he heard only a "thump" near his rear wheel), Police Officer Albert Walters (who arrived at the accident scene twenty minutes after the collision), and Roy Jones (a friend of Hamann's who admittedly did not see the accident).

Hamann's own testimony clearly establishes that he was negligent as to lookout. It is undisputed that he never saw the little girl until after the accident. The jury could have concluded that the reason why Hamann failed to see her was because he made no effort to look right or left or use his peripheral vision. Hamann, by his own admission, only looked straight ahead. Hamann knew that children were present. He was aware of the fact that all the schools in Columbus were located south of James street and that many children crossed at the intersection when returning home from school. Under these circumstances, this court has held that a motorist does not fulfill his lookout duty by looking only straight ahead.[2]

Mr. Hamann was driving 20 miles per hour at the time of the accident. He did not attempt to slow down as he approached the intersection. As the trial judge

---

[1] *Bleyer v. Gross* (1963), 19 Wis. 2d 305, 307, 120 N. W. 2d 156.

[2] *Schneider v. Neuman* (1957), 2 Wis. 2d 160, 163, 85 N. W. 2d 813.

indicated, Hamann's speed was too fast under the circumstances. Sec. 346.57 (2), Stats., provides that:

"No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. The speed of a vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and using due care."

Sec. 346.57 (3), Stats., provides that:

"The operator of every vehicle shall, consistent with the requirements of sub. (2), drive at an appropriate reduced speed when approaching and crossing an intersection . . . when passing school children, . . . and when special hazard exists . . . by reason of weather or highway conditions."

As already stated, Hamann knew that many children cross James street while returning home from school. He knew that school was just getting out. He knew, or should have known, that small children returning from school might not be visible from behind the high snowbanks near the intersection. A motorist must exercise increased vigilance with respect to lookout and speed when he knows or should know that children are present.[3]

Thus, as to both lookout and speed the record clearly supports the jury's determination that Hamann was negligent.

The crucial question then becomes whether Hamann's negligence was causal. Defendant contends that such negligence, if any, was not causal as a matter of law.

It is undisputed that Hamann never saw the plaintiff prior to the impact. It is also undisputed that the girl and the automobile collided while she was in the crosswalk, at a point about 10 feet north of the curb. There was some testimony that she was hurrying as she left the curb as

[3] *Binsfeld v. Curran* (1964), 22 Wis. 2d 610, 612, 126 N. W. 2d 509.

distinguished from walking or running. The argument is made that there was nothing that Hamann reasonably could have been expected to do to avoid the accident, that the fact that he did not look to his right or left and did not see the plaintiff is of no consequence because she was going to collide with Hamann's car in any event.

We must conclude, however, that a proper lookout, and a reasonable speed under the conditions, would have given Hamann time to apply his brakes and avoid the accident, or time to alert the plaintiff of his approaching vehicle.[4] A car going 20 miles per hour would cover at least four times the distance the plaintiff, even "hurrying" at five miles per hour, could go, or 40 feet to the plaintiff's 10.

This is sufficient evidence to support the jury's finding that Hamann's negligence was a substantial factor in causing the accident.[5]

The cases from other states cited by the defendant have been examined and are not applicable to the instant case. Most of the cases dealt with the question of whether an accident involving the defendant's car and the plaintiff had in fact occurred. In none of the cited cases was the defendant found negligent in the first instance (most cases expressly held that the defendant was not negligent). Therefore, the cause question never became material.

*Jury Instructions.*

Defendant argues that the trial court erred in refusing to give certain requested instructions.

---

[4] *See Conery v. Tackmaier* (1967), 34 Wis. 2d 511, 149 N. W. 2d 575, where the Supreme Court reversed a jury verdict that a driver was not causally negligent in proceeding about 18 to 20 miles per hour and failing to see the three- and four-year-old plaintiffs until they were in the road and off the curb.

[5] *Lee v. National League Baseball Club* (1958), 4 Wis. 2d 168, 175, 89 N. W. 2d 811; *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis. 2d 620, 627, 139 N. W. 2d 595; *Conery v. Tackmaier, supra,* footnote 4, at page 515.

In addition to the ordinary instruction on burden of proof (Wis J I—Civil, Part I, 200) the following instruction was requested by the defendant:

"The burden is on the plaintiff to prove negligence of the defendant. The burden is not lifted by merely producing proof which, in some reasonable view of it, establishes a legitimate theory of [negligence], but with no greater certainty, from any fair viewpoint, than an opposing theory, ground on the evidence, of no such wrong . . . .

"Accordingly, if the evidence in this case is in such a state that the inference that plaintiffs were damaged by some cause not connected with the defendant is as strong as the inference that they were damaged by some cause connected with the defendant, then you can do nothing but speculate as to the cause and must, therefore, find that the plaintiffs have not met their burden of proof thereon."

The court refused to give this additional requested instruction. The court also refused to give another lengthy requested instruction cautioning the jurors that speculation and conjecture could not be employed by them in deciding whether the plaintiff had met his burden of proof.

The instruction that was given covering burden of proof adequately informed the jury of its duty in that regard. The instruction stated:

"All of the questions of the special verdict which you are to answer, except those relating to [comparison of negligence and] damages, are to be answered either 'Yes' or 'No.' The burden of proof as to any such question is upon the party or parties who contend that you should answer the question 'Yes.' Such burden is to satisfy or convince you, to a reasonable certainty, by the greater weight of the credible evidence, that 'Yes' should be your answer. That means that before you are justified in answering the question 'Yes,' you must be satisfied that the greater weight of the credible evidence not only leads to the conclusion that the question should be answered 'Yes,' but it must also satisfy you to the point of reasonable certainty that 'Yes' should be your answer. If, after a fair consideration of all the evidence bearing upon the question, you become so satisfied or convinced

that the answer should be 'Yes,' then it is your duty to so answer the question; but if you are not so satisfied or convinced, you should answer the question 'No.'

"By *credible evidence* is meant evidence which, in the light of reason and common sense, is worthy of belief." [6]

The additional instructions concerning burden of proof were properly refused by the trial court. These instructions would have been superfluous. The instruction given is adequate to properly instruct the jury where, as here, there is direct proof of negligence and causation. The failure to give these requested instructions was not error.

The defendant requested the following instruction relating to lookout:

"If you find that the operator of the automobile, Clarence Hamann, saw the pedestrian, Colleen Burke, as soon as it was reasonably and prudently possible for him to see her or if you find that in the exercise of ordinary care it was not possible to have seen the pedestrian, Colleen Burke, before Clarence Hamann saw her, then you should not find Clarence Hamann negligent with respect to lookout. In determining this issue as to lookout on the part of Clarence Hamann you are instructed that you are to consider all of the circumstances then and there existing, including other traffic, any obstructions to view and the size of the pedestrian, Colleen Burke and whether or not she was 'hunched over'. Accordingly, you are instructed to consider Clarence Hamann's opportunity under the circumstances to see the pedestrian."

The court refused to give this instruction and gave the following one instead:

"It is the duty of every operator of a motor vehicle to exercise ordinary care to keep a careful lookout ahead and about him.

"The exercise of ordinary care requires him to make observations at a point or points where his observations will be efficient for protection from injury to person or property, and requires the seasonable and effective use of a driver's sense of sight to observe timely;

---

[6] Wis J I—Civil, Part I, 200.

"The presence, location, and movement of other motor vehicles that may be within or approaching his course of travel;

"And not only the movement of other vehicles, but also any and all objects on the highway, stationary or otherwise, with which he might collide;

"Not only the presence, location, and movement of other users of the highway, pedestrians as well as vehicles, but traffic signs and signals, highway markers, obstructions to vision, and everything else that might warn him of possible danger.

"When approaching an intersection where a marked or unmarked crosswalk for pedestrians exists, he must maintain such a lookout as is reasonably necessary to avoid striking them, and to yield the right of way to pedestrians when they have the statutory right of way.

"When hazards exist because of highway conditions, obstructions to view, weather, visibility, or other conditions, vigilance must be increased commensurate with the hazards then and there existing.

"One charged with the duty of maintaining a lookout must look with such attention and care as to see what is in plain sight. If he looks and does not see what is in plain sight, he will not be heard to say that he maintained a proper lookout, and he is just as negligent as if he did not look at all.

"The duty to look means to look efficiently. One who looks and fails to see what is in plain sight is in precisely the position he would be in if he did not look at all."

The foregoing instruction encompasses Wis J I—Civil, Part I, 1055 Lookout, and Wis J I—Civil, Part I, 1070 Lookout: Failure to See Object in Plain Sight.

The trial court properly excluded defendant's lookout instruction. The requested instruction did not inform the jury that a motorist has a duty to observe things that are both ahead of him and about him; it failed to inform the jury that a motorist has a duty to see what is in plain sight; and it did not inform the jurors of the lookout required when approaching intersections. All of these defects were cured by giving the standard jury instructions. Additionally, defendant's requested instruction was properly excluded because it included the

"hunched over" phrase. The defendant admitted that he never looked in plaintiff's direction; therefore, even if she had been taller he would not have seen her.

### Damages.

Appellants contend that the damages awarded by the jury are excessive. They question the award to Colleen Burke for her personal injuries in the amount of $19,500. They also question the jury's award of $3,900 for future medical and hospital expenses.

The standard of this court's review of damage verdicts challenged as excessive is that the verdict will not be disturbed if there is any credible evidence which, under any reasonable view, supports the jury finding.[7] This is especially true when the verdict has the trial court's approval.[8]

Dr. Charles Shearer, a Columbus physician, treated Colleen in the emergency room at St. Mary's hospital immediately following the accident. He testified that Colleen was in a semiconscious condition when she arrived at the hospital. The doctor observed that Colleen had a deep laceration (three or four centimeters long) on her left cheek and that several teeth had been knocked out and others displaced. The laceration has left a disfiguring scar. X rays disclosed fractures of both the upper and lower jawbone and fractures of the right collarbone and ribs. Colleen was in pain during her hospital confinement, which lasted for four days.

Dr. Frank D. Bernard, a plastic surgeon from Madison, testified that he had examined Colleen six times since the accident. He testified that revision surgery would be

[7] *Metcalf v. Consolidated Badger Co-operative* (1965), 28 Wis. 2d 552, 561, 137 N. W. 2d 457; *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. 2d 487, 489, 120 N. W. 2d 692; *Erdmann v. Milwaukee Automobile Mut. Ins. Co.* (1963), 20 Wis. 2d 439, 446, 122 N. W. 2d 430.

[8] *Id.*

necessary to improve the appearance of Colleen's scar and that two separate operations would be required. Each operation would require five days' hospitalization. Postoperative care would also be necessary. Dr. Bernard pointed out that plastic surgery could make the scar less noticeable, but that the scar would always be there.

Dr. Earl E. Jahnke, a dentist from Columbus, had examined Colleen shortly before the accident. His preaccident dental examination disclosed that Colleen was not in need of any orthodontic work. A postaccident examination revealed that several permanent teeth required attention. Colleen's left lateral incisor is now pointed in a lingual position, *i.e.,* toward the roof of the mouth. The first left bicuspid and the first molar are too far forward, causing the cuspid tooth (eyetooth) and the second bicuspid, which are presently unerupted, to become locked in the jawbone. Dr. Jahnke testified that orthodontic bands ("braces") would be necessary to correct this condition. The orthodontic treatment, which is uncomfortable, would have to continue until Colleen was approximately fourteen years old.

Colleen missed three weeks of school as a result of the accident. She had to wear a brace on her collarbone for five months after the accident.

The scar and the mouth brace that Colleen is required to wear have caused her to be teased by her classmates. This causes her to cry when she returns home from school. Colleen is also fearful of the pending plastic surgery she must undergo.

When the jury's verdict of $19,500 to Colleen for her injuries was challenged in the lower court, the trial court stated:

". . . it is true that the little girl has had an excellent recovery and didn't have to have her jaw wired and so forth, but she does have scarring, and she is a girl, and she is young, and the Court does not feel that that verdict is excessive."

From our review of the record, and viewing the evidence in the light most favorable to the plaintiff,[9] we are satisfied that the jury award of $19,500 for Colleen Burke's injuries, though high, is not excessive; it is within the range, though at the upper limits, of reasonably debatable amounts.[10]

The additional award of $3,900 to Mr. Burke for future hospital and medical expenses was not excessive. Dr. Jahnke estimated the cost of Colleen's orthodontic work at $1,500. Dr. Bernard estimated the cost of the two plastic surgery operations at approximately $750 each. Both estimates were based on present-day prices. Dr. Bernard also testified that Colleen would be required to undergo postoperative care. Colleen lives in Columbus and will have to be transported to Madison many times to undergo the various treatments and operations. These transportation costs are an additional sizeable expense which Mr. Burke will be forced to incur. It is true that Mr. Burke would not have this particular expense if Colleen's doctors were located in Columbus; however, an injured person is not required to undergo treatment at the nearest hospital or with the nearest doctor.[11]

*By the Court.*—Judgment affirmed.

[9] *Kincannon v. National Indemnity Co.* (1958), 5 Wis. 2d 231, 233, 92 N. W. 2d 884.

[10] *Sulkowski v. Schaefer* (1966), 31 Wis. 2d 600, 607, 143 N. W. 2d 512.

[11] *Ashley v. American Automobile Ins. Co.* (1963), 19 Wis. 2d 17, 23, 119 N. W. 2d 359.